FISHER v. CLEVELAND, C., C. & ST. L. RY. CO. et al.

(Circuit Court, E. D. Kentucky.    April 9, 1909.)

1. RAILROADS (§ 22*)—ACTION—VENUE—"DOING BUSINESS."

Where a part of defendant railway's line passed into K. county, Ky., the railroad did business in that state, so that some Kentucky court had jurisdiction of an action against it, and this, though none of them were within Civ. Code Prac. Ky. § 73, providing that an action against a carrier for injury to a person must be brought in the county in which the defendant or either of the several defendants resides, in which plaintiff is injured, or in which he resides, if he resides in a county into which the carrier passes.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 50; Dec. Dig. § 22.*

For other definitions, see Words and Phrases, vol. 3, pp. 2155–2160; vol. 8, pp. 7640, 7641.]

2. RAILROADS (§ 22*)—ACTIONS—VENUE.

Civ. Code Prac. Ky. § 73, provides that an action against a carrier for an injury to a person must be brought in the county in which the defendant or either of the several defendants resides, or in which the plaintiff is injured or in which he resides, if he resides in a county into which the carrier passes. *Held*, that an action for injuries could not be brought against a carrier in a county into which the carrier's line passed, but in which plaintiff did not reside, nor in a county in which the carrier had no agent on whom process could be served.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 50; Dec. Dig. § 22.*]

3. RAILROADS (§ 22*)—ACTIONS—VENUE.

Defendant carrier did not pass into K. county, Ky., prior to October 24, 1905, when it contracted with a bridge company for a division of work over the lines passing into K. county, that, in consideration of defendant assisting the bridge company in doing such work, it would render assistance to the railroad company of a similar amount, and that the railroad company should pay the bridge company 50 cents a car in so far as the bridge company's assistance exceeds that rendered by the railroad company. *Held*, that the railroad company's cars and servants while operating in K. county were the servants of the bridge company and under its control, and hence the railroad company was not liable to be sued in K. county for injuries to a person residing there under Civ. Code Prac. Ky. § 73, authorizing an action against a common carrier in a county in which the plaintiff resides, and into which the carrier passes.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 50; Dec. Dig. § 22.*]

Action by Richard Fisher against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company and another.    On plea in abatement to jurisdiction after removal.    Sustained.

Plaintiff Richard Fisher lived in Covington, Ky., and was employed by defendant railway company as night car cooper and sealer at its freight depot in Cincinnati, Ohio.    Defendant Michael Igo was also employed by the railroad company in the same capacity and place in the daytime.    The duty of both was to see that cars were properly sealed on departure, to examine and record the condition of seals on incoming cars, and to break the seals on cars to be unloaded.    On the night of December 6, 1905, plaintiff was walking along a platform at the freight depot to examine the seals of certain cars on the track adjoining the platform, at the end of which were three or four steps leading therefrom to a lower level.    When plaintiff reached the steps, he start-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ed to go down, but the steps having been broken down by some sectionmen during the day, while defendant Igo was on duty, of which Igo did not inform plaintiff, he fell to the ground, and received injuries for which he sued. The case having been removed to the federal court notwithstanding defendant Igo was also a resident of Kentucky, on a finding that no cause of action was stated against him, defendant railroad company filed a plea in abatement to the court's jurisdiction on the ground that under the Kentucky Code the Kentucky court from which the cause has been removed was without jurisdiction.

S. D. Rouse and R. C. Simmons, for plaintiff.
John Galvin and Maurice L. Galvin, for defendants.

COCHRAN, District Judge. The corporation defendant since the filing of the transcript herein and overruling of the motion to remand has questioned this court's jurisdiction of the cause on the ground that the state court from whence it was removed did not have jurisdiction thereof. Of course, if this is true, then this court does not have jurisdiction. Said defendant first raised the question by special demurrer, and then by plea in abatement. I have overruled both, holding that the state court had jurisdiction. After so holding, my attention has been called by the corporation defendant to the case of Byrne v. Kansas City, etc., R. Co., 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693, and in the course of my reading I have come across the case of Standard Oil Co. v. Anderson (decided by the Supreme Court of the United States February 1, 1909) 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. ——. Both of these cases have a bearing on the question whether the defendant corporation passes into Kenton county, Ky., in the circuit court whereof this action was originally brought. On my motion a reargument has been had on the question of jurisdiction, and at my instance the affidavits of E. P. Goodwin and J. S. Sweeney setting forth in detail the nature of the direction and control exercised by the bridge company over the engines and crews of the corporation defendant passing over the bridge and tracks of said company under the contract between the two have been filed. And, in order to set forth fully my reasons for the conclusion which I have reached in regard to the matter, I have prepared this written opinion.

Section 73 of the Civil Code of Practice of Kentucky provides that an action against a common carrier for an injury to a person must be brought in the county in which the defendant or either of the several defendants resides, or in which the plaintiff is injured, or in which he resides, if he resides in a county into which the carrier passes. Neither of the defendants resided in Kenton county when the suit was brought, and the plaintiff was not injured therein. He resided, however, in that county, so that if at the time the corporation defendant passed thereinto the Kenton circuit court had jurisdiction of the action. It does not necessarily follow that, if it did not pass thereinto, that court did not have jurisdiction of the action. It appears from the plea in abatement that said defendant passes into Jefferson county, Ky., and hence does business in the state. This being so, some court in Kentucky has jurisdiction of the cause of action, and this notwithstanding the fact that no court in Kentucky comes within the terms of section 73 of the Code. The circuit court of Jefferson county does not come within that sec-

tion; because, though said defendant passes into Jefferson county, plaintiff does not reside therein. This was so decided by the Kentucky Court of Appeals in the case of C. & O. Ry. Co. v. Cowherd, 96 Ky. 113, 27 S. W. 990, but the Kenton circuit court does not have jurisdiction of the cause under this view of the matter because said defendant had and has no agent in Kenton county upon whom process could or has been served. It was undertaken to be brought before that court by service of summons on said defendant's superintendent and designated agent for service of process who resides and was served in Jefferson county. It follows, therefore, that the jurisdiction of the Kenton circuit court depends on the question whether the defendant corporation at the time the action was brought within the meaning of said Code provision passes into Kenton county. If it did not, that court did not have jurisdiction. If it did, it had jurisdiction.

Now, it is certain that said defendant did not pass into Kenton county prior to October 24, 1905, when the contract between it and the bridge company went into effect; for prior to that time said defendant did nothing that could possibly be construed as a passing into Kenton county. If it passed into Kenton county at the time the action was brought, it was by virtue of what it has done since then under said contract. Nor can it be said that it passed into Kenton county from the mere fact that its engines and crews have since then passed into Kenton county. In the case of Byrne v. Kansas City R. Co., supra, it was held that the railroad company was not liable to a person injured by its engine in charge of its engineer and fireman whilst on the track of the bridge company, because the same were there under a contract of renting to that company by the railroad company. The former was paying the latter for the use thereof $10 a day and its expenses in the operation thereof. The basis of the holding was that, though the engine and trainmen were the property and servants of the railroad company, they were not at the time of the injury doing the work of the railroad company, but that of the bridge company, and the question as to whose work they were doing was considered to be determined by the fact as to whose control and direction they were then under. Judge Taft said:

"They were [referring to the trainmen] it is true general servants of the railway company, but at the time of the accident they were engaged in the work of the bridge company, were subject to the orders of the bridge company's officer, and in what they did or failed to do were acting for the bridge company. The result is determined by the answer to the further question, whose work was the servant doing? And under whose control was he doing it?"

And in the case of Standard Oil Co. v. Anderson Mr. Justice Moody said:

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it, nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with persons to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other for a consideration shall himself perform the work through servants of his own selection, retaining the direction and control of them for the period. In the first case, he to whom the workmen are furnish-

ed is responsible for their negligence in the conduct of the work, because the work is his work, and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control and mere suggestion as to detail or the necessary co-operation, where the work furnished is a part of a larger undertaking."

If, then, it is possible that the defendant corporation's engine and crew may pass into Kenton county and it not be responsible for the negligence of the crew in the operation of the engine and cars which it is drawing, it is possible that such may be the case, and said defendant be said not to pass into Kenton county within the meaning of the Code provision; for the same state of facts which would make it not liable for such negligence would prevent its being said that it so passed

What, then, is essential in addition to the passage of such engines and crews into Kenton county in order that said defendant may be liable for the negligence of the latter and that it may be said to so pass into said county? It is essential that when those engines and crews pass into Kenton county that they be doing its work, and not the work of the bridge company. If they are doing the work of that company, then it is not so liable, and it does not so pass. Whose work, then, do they do? It is certain that they are on the property of the bridge company when they so pass, and they are doing that which that company was organized to do and for which it exists. It is certain, also, that at the time they are so passing they are under its general supervision, direction, and control. That such is the case speaks out of the contract under which they pass. No doubt, it was in recognition thereof that it was provided in the contract that the bridge company, and not the defendant, should be liable for accidents happening while they are so passing. It is stated generally in the affidavit of Van Winkle that such is the case, and it is shown to be so more in detail by the affidavits of Goodwin and Sweeney. Nothing is shown to the contrary, and I do not understand that it is claimed that it is otherwise.

I gather from the decision of the Sixth Circuit Court of Appeals and the Supreme Court referred to, that the test as to whose work the engines and crews are doing in such circumstances is under whose general supervision, direction, and control they are doing the work. The consideration for the defendant corporation thus assisting the bridge company in doing its work is the rendition of a like amount of assistance by said bridge company to said defendant in the doing of its work and the payment to the bridge company 50 cents per car in so far as the assistance rendered by it exceeds that rendered by said defendant. It may, therefore, be said that the defendant corporation rents or lets its engines and crews to the bridge company in return for such assistance and payment, and thus that it comes directly within the Byrne Case. It does not come within the Anderson Case because there the winch and drum and winchman when the work of hoisting

was being done were on the dock of the defendant, and were under its general supervision, direction, and control. They never passed out from its general supervision, direction, and control into that of the stevedore. The work was done in conjunction with that of the stevedore, and in answer to signals from the stevedore. But by virtue thereof the winch and drum and winchman did not pass out from under the general supervision, direction, and control of the defendant.

Mr. Justice Moody said:

"Was the winchman at the time he negligently failed to observe the signals engaged in the work of the master's stevedore under his rightful control, or was he rather engaged in the work of the defendant under his rightful control? We think the latter was the true situation. The winchman was undoubtedly in the general employ of the defendant who selected him, paid his wages, and had the right to discharge him for incompetency, misconduct, or any other reason. In order to relieve defendant from the results of the legal relation of master and servant, it must appear that that relation for the time has been suspended, and a new like relation between the winchman and the stevedore had been created. The evidence in this case does not warrant the conclusion that this changed relation had come into existence. For reasons satisfactory to it the defendant preferred to do the work of hoisting itself, and received an agreed compensation for it. The power, the winch, the drum, and the winchman were its own. It did not furnish them, but furnished the work they did to the stevedore. The work was done by the defendant for a price as its own work, by and through its own instrumentalities and servants under its own control."

I therefore feel constrained to hold that this court is without jurisdiction of the cause herein, the order overruling the plea in abatement set aside, and the plea adjudged good.