OTIS ELEVATOR CO. v. CLIFF.

(Circuit Court of Appeals, Eighth Circuit. November 16, 1912.)

No. 3,661.

1. MASTER AND SERVANT (§ 193*)—INJURIES TO SERVANT—FELLOW SERVANTS.

Defendant elevator company, having a contract to install an elevator engine in a building, employed a teaming company to assist in lowering the engine to the bottom of the shaft. Plaintiff, representing the teaming company, entered the elevator shaft, stepping on certain planking covering the opening in the shaft at the level of the first floor, placed there by the servants of the elevator company, and, having made an inspection, left the building. During his absence, the planking was sawed partly through to permit the lowering of the engine, and on plaintiff's return, about 30 minutes after, without notice of the sawing, he again stepped on the planking to inspect the appliances, when his weight broke the planking, and he fell to the bottom of the shaft, and was injured. *Held* that, if plaintiff's injuries resulted from negligence, it was the negligence of fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 480–485; Dec. Dig. § 193.*]

2. MASTER AND SERVANT (§ 252*)—INJURIES TO SERVANT—FELLOW SERVANTS— ABROGATION RULE—STATUTES—NOTICE.

Laws Colo. 1893, p. 129, provided that masters should be liable for injuries to servants resulting from the negligence of certain fellow servants under certain circumstances, but that no action for an injury within the terms of the act should be maintained unless written notice of the time, place, and cause of injury should be given to the employer within 60 days after an accident. Laws Colo. 1901, p. 161, in general terms affirmed the doctrine of employers liable for injuries to employés, and, in addition, entirely abrogated the fellow servant doctrine, but provided that it should not be construed to repeal or change the existing laws relating to the right of the person injured to maintain an action against the employer. *Held*, that the act of 1901 did not repeal the provision for notice contained in the act of 1893, and hence a servant was not entitled to recover against the master for injuries resulting from the negligence of a fellow servant, where the statutory notice was not given.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 806; Dec. Dig. § 252.*]

In Error to the Circuit Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by E. C. Cliff against the Otis Elevator Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

Cliff sued the Elevator Company to recover damages for personal injuries received by him on the 15th day of April, 1910, while assisting in placing an elevator engine in the bottom of an elevator shaft in the Denver Gas & Electric

---

Company's building, Denver, Colo. At the trial of the case, counsel for the Elevator Company moved the court for a directed verdict in its behalf. The motion was denied, and the jury returned a verdict in favor of Cliff. Assigning this ruling of the trial court as error, the Elevator Company has brought the case here on writ of error.

The material facts, as shown by the record, which condition the correctness of the ruling of the court, are as follows: The Elevator Company had a contract for placing an engine in the bottom of the elevator shaft hereinbefore mentioned. From the first floor of the building in which the shaft was located to the bottom of the shaft was about 12 feet. Prior to the 15th day of April, 1910, there had been placed over the opening of this shaft some planks, called in the testimony of some witnesses a platform. Cliff represented the Cliff-Van Ness Teaming Company, which had been employed by the Elevator Company to assist in lowering the elevator engine to the bottom of the shaft. When Cliff first arrived at the building, he stepped upon the planking covering the opening in the elevator shaft, which was on a level with the first floor of the building, for the purpose of looking up the shaft to the third floor in order to ascertain if there had been any hand tackle placed in the shaft for the purpose of hoisting timbers to be used in connection with lowering the engine to the bottom of the shaft. He then had occasion to go out of the building for the purpose of taking down a derrick situated in the alley near the building. On returning to the building after an absence of about 30 minutes, he went to the shaft for the purpose of again looking up to see if the hand tackle had been placed in position. In doing this he again stepped upon the planking, when it immediately gave way, and threw him to the bottom of the shaft. He testified that the planks appeared just the same as when he had stepped on them before. Foley, the foreman of the Elevator Company, at about the time Cliff left the building to attend to the removal of the derrick, ordered one Harries to remove the planking from the elevator shaft so that the engine could be lowered. Harries did this by sawing the planking, and at the time Cliff stepped upon them they had been so far sawed by Harries that the weight of Cliff broke the planking down.

The negligence which Cliff alleges caused his injuries consisted in the sawing of the planking without giving him any notice or warning thereof when he returned to the vicinity of the shaft. There was testimony on the part of Harries, who did the sawing, and other witnesses, that Cliff was present and heard Foley, the foreman, order Harries to saw the planks, and that Harries was actually engaged in sawing the planks when Cliff returned and that Harries called to him and warned him that the planks had been sawed. This testimony was denied by Cliff.

There were engaged in the work of lowering the elevator engine to the bottom of the shaft Cliff, Weaver, Foley, the foreman of the Elevator Company, Harries, who did the sawing, and three or four other men. They were all engaged in the performance of a single work and the accomplishment of the same object. They were all in the employ of the Otis Elevator Company, except Weaver, who was employed by Cliff-Van Ness Teaming Company. Foley had no authority to employ or discharge men, but was simply foreman of this particular job under the orders of a Mr. Donald, the superintendent of the Otis Elevator Company.

E. I. Thayer, of Denver, Colo. (Hughes & Dorsey, of Denver, Colo., on the brief), for plaintiff in error.

James H. Brown and Carl H. Cochran, both of Denver, Colo., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and WM. H. MUNGER, District Judge.

CARLAND, Circuit Judge (after stating the facts as above). [1] The undisputed facts clearly show that the negligence, if any, which caused Cliff's injury, was that of a fellow servant. For this kind of

negligence the Elevator Company was not liable at common law. We must turn, therefore, to the legislation of the state of Colorado for the purpose of determining whether this rule of the common law had been changed on April 15, 1910. We do not consider Session Laws Colo. 1911, c. 113, repealing Sess. Laws Colo. 1893, p. 129, c. 77, and Sess. Laws Colo. 1901, p. 61, c. 67, as it was passed subsequent to the date of the injury.

[2] The act of 1893 provided that an employer should be liable to an employé for personal injury in three classes of cases: (1) By reason of any negligent defect in the condition of the ways, works, or machinery connected with or used in the business of the employer; (2) by reason of the negligence of any person in the service of the employer intrusted with or whose principal duty is that of exercising superintendence; (3) by reason of the negligence of any person in the service of the employer who has charge of the control of any switch, signal, locomotive engine or train upon a railroad. The cases specified in which the liability of the master exists for the negligence of a fellow servant probably do not extend to a case like the one before us. The act of 1901, however, in general terms affirms the doctrine of the liability of the employer to the employé for the former's negligence or omission of duty, and, in addition thereto, entirely abrogates the fellow servant doctrine, and provides that the employer shall be liable in all cases to the same extent as though the negligence of a co-employé was that of the employer himself. The act last mentioned would include cases like the one at bar. The act of 1893 provided that no action for the recovery of compensation for any injury within the terms of the act should be maintained unless written notice of the time, place, and cause of the injury should be given to the employer within 60 days after the occurrence of the accident. The act of 1901 contained this provision:

"That this act shall not be construed to repeal or change the existing laws relating to the right of the person injured * * * to maintain an action against the employer."

In Lange v. Union Pacific R. Co., 126 Fed. 338, 62 C. C. A. 48, this court held that the act of 1901 did not repeal the act of 1893. It was there said that:

"The conditions, limitations and procedure of the act of 1893 are in their nature applicable to like causes arising under the act of 1901, which in effect is merely an extension and enlargement of the field of operation."

It is true that in the Lange Case the negligence alleged came within one of the provisions of the act of 1893, but the holding of the court that the act of 1901 in no way repealed the act of 1893 would leave the conditions upon which the liability of the master depended under the act of 1893 in full force as to the liability provided in the act of 1901. In other words, the court held that the two acts must stand together, the latter act simply enlarging the liability of the master. It was also held in the Lange Case that the failure to give the notice required by the act of 1893 was fatal to the case, because the liability of the master was conditioned upon the giving of the notice.

In Simerson v. St. Louis & S. F. R. Co., 173 Fed. 612, 97 C. C.

A. 618, this court held that a general statute of Kansas which made railroad companies liable for injuries to or the death of employés through the negligence of fellow servants, and provided that a notice in writing that an injury had been sustained, stating the time and place thereof, should be given by or on behalf of the person injured to such railroad company within eight months after the occurrence of the injury, created a new liability and conferred a new right not before existing, both conditioned on the giving of the stated notice. The court also held in the case last cited that the contention that the defendant could not avail itself of the want of notice without a special plea setting it up was untenable. It was said:

"The motion for a directed verdict at the close of the proof, on whatever ground it may have been argued, raised a question of law whether giving full force and effect to all the facts proven a cause of action had been made out under the law."

In Denver & R. G. R. Co. v. Wagner, 167 Fed. 75, 92 C. C. A. 527, a case in this court, it was held that a petition for death of a passenger under the statutes of New Mexico giving a right of action to the surviving widow of a person killed by wrongful act which failed to allege notice to the carrier served within the territory, as required by Laws of New Mexico 1903, p. 51, c. 33, amending the statute under which the action was brought, was fatally defective. It was also held in this case that a motion for a directed verdict would effectually raise this question for the reason that the request for a directed verdict suggests that, under the law and undisputed evidence applied thereto, the plaintiff is not entitled to recover.

Under the authority of the cases cited, we are of the opinion that the motion for a directed verdict raised the question of the right of the plaintiff to recover, and that for a failure to give the notice required by the statute the verdict should have been directed for the defendant.

It results that the judgment of the court below must be reversed, and a new trial ordered.