CHICAGO, B. & Q. R. CO. v. RICHARDSON.

(Circuit Court of Appeals, Eighth Circuit. January 2, 1913.)

No. 3,785.

1. MASTER AND SERVANT (§ 139*)—INJURIES TO SERVANT—RAILROADS—COLLISION—NEGLIGENCE—PROXIMATE CAUSE.

Defendant railroad company had a dispatcher's order known as No. "31" to reverse the rights of trains, which if used must be signed by the conductor receiving it, and prevents the forward movement of the train until the agent has wired the dispatcher that the conductor has signed the order and the dispatcher has wired back the word "complete." It also had an order known as No. "19" which was exactly the same as "31," except that, when received, it was repeated back to the dispatcher and then delivered to the conductor and engineer without any information going to the dispatcher from the operator that the conductor has signed for the order. The railroad company for some months had been in the habit of using "19" orders and attempted to reverse the rights of certain trains on the day of the accident by sending to an operator one of these orders. On the arrival of one of the trains, the conductor and engineer both asked him if he had orders, and, he answering in the negative, having forgotten that he had received a "19" order for the train, a clearance was given, and a collision ensued, resulting in injury to plaintiff, an expressman and baggage agent on the train. Held, that the negligence of the operator in failing to deliver the order, and not the negligence of the railroad company, if any, in using a "19" instead of a "31" order, was the proximate cause of the collision.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 275, 282, 289, 296; Dec. Dig. § 139.*]

2. NEGLIGENCE (§ 62*)—PROXIMATE CAUSE.

An injury which is not the natural consequence of an act or omission, and that would not have resulted but for the interposition of a new and independent cause, is not actionable.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 76–79; Dec. Dig. § 62.*]

3. MASTER AND SERVANT (§ 198*)—INJURIES TO SERVANT—RAILROAD EXPRESS AND BAGGAGE AGENT—TELEGRAPH OPERATOR—"FELLOW SERVANTS."

Where a railroad express and baggage agent was injured in a collision resulting from the negligence of a local telegraph operator in failing to deliver orders to the conductor of the train, both were servants of the railroad company in the operating department and were fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 493–514; Dec. Dig. § 198.*

For other definitions, see Words and Phrases, vol. 3, pp. 2716–2730; vol. 8, p. 7662.

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 86 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

4. MASTER AND SERVANT (§ 253½*)—INJURIES TO SERVANT—FELLOW SERVANTS —NOTICE.

Where plaintiff, a railroad express and baggage agent, was injured in a collision due to the negligence of a local telegraph operator in failing to deliver orders to the conductor of plaintiff's train, and no written notice of the time, place, and cause of the injury was given the railroad company within 60 days, and the action was not brought within 2 years after the occurrence of the accident, the railroad company was not liable under Rev. St. Colo. 1908, § 2061, abolishing the fellow-servant rule, but providing that no action for the recovery of compensation for injury or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

death by reason of the negligence of a fellow servant could be maintained unless written notice, etc., was given to the employer within 60 days and action commenced within 2 years.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 253½.*]

In Error to the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Action by John H. Richardson against the Chicago, Burlington & Quincy Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Harry B. Tedrow, of Boulder, Colo. (Charles W. Franklin, E. E. Whitted, and Robert H. Widdicombe, all of Denver, Colo., on the brief), for plaintiff in error.

Horace N. Hawkins, of Denver, Colo., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and W. H. MUNGER, District Judge.

CARLAND, Circuit Judge. Richardson sued the Railroad Company for the purpose of recovering damages for personal injuries which he received on March 11, 1906. He recovered a judgment, and the Railroad Company has brought the case here on writ of error. The facts upon which the liability of the company depends are as follows:

On March 11, 1906, the Chicago, Burlington & Quincy Railway Company was operating a line of road extending from Denver, Colo., to Akron, in said state. Among the trains which said company operated upon said line of road was a train known as No. 14, which left Denver daily at 1:15 o'clock p. m. for the East. Richardson rode in the baggage car, and his duties were to work up express, check up waybills, check up express matter, stamp the waybills with the route stamp, check up the United States mail and keep a record of that, take the checks of the baggage, send a return sheet of all baggage received out of Denver, and put off baggage. He performed duties both for the Railway Company and the Adams Express Company. He was employed directly, however, by the Adams Express Company, and received his pay from it.

About 88 miles east of Denver on said line of road is the town of Brush, at which town the Railway Company maintained an office, station agent, and operator. The next station east of Brush is Pinneo, distant 10 or 12 miles from Brush. At Pinneo, the Railway Company maintained a telegraph operator, day and night. The next point beyond Pinneo is the side track of Xenia, which is between 6 and 8 miles east of Pinneo. Next east of Xenia, and about 6 or 7 miles therefrom, is the town of Akron, where there is a regular office, agent, and operator. The regular meeting place scheduled by time card for passenger train No. 14, going east, and passenger train No. 1, going west, was Xenia, where there was nothing but a side track and no telegraph office. There was a general rule of the Railway Company in effect that trains east bound were superior to trains of the same class

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

west bound. The terms "superior" trains and "inferior" trains had a definite, established, and customary meaning, and the general rule referred to meant that an "inferior" train must keep clear of the time of the "superior" train, and as applied to the facts of the present case meant that train No. 14, being east bound and hence the "superior" train, was not obliged to pay any attention to the west-bound trains so long as it confined itself to its own schedule on the time card. Under this practice it was incumbent upon the west-bound or "inferior" train to arrive at the regular time card meeting place and be upon the side track before the leaving time of the "superior" train at that particular point.

On the day in question, No. 14, going east, and No. 1, going west, were scheduled to meet at Xenia at 4:25 o'clock p. m. If No. 1 did not have sufficient time to do that, it would have been obliged to stay at Akron, for in the absence of special orders No. 14 would have the right upon reaching Xenia and not meeting No. 1 to proceed on its own schedule past Xenia to Akron or further, passing No. 1 on some side track where it would be awaiting No. 14's arrival. On this particular day, No. 14 was practically on time. Brush was a regular stopping place for No. 14 and where the conductor of that train was obliged to register, and, in addition to that fact, the semaphore was displayed, indicating to the crews of all trains that there were orders there for some train or trains and making it imperative for each train to stop and its conductor to inquire whether such orders were for him. No. 14 stopped at Brush, and the conductor went into the depot to register. In the meantime, express matter, baggage, and so forth, was being taken from the train. The conductor inquired of one Overstreet, who was the agent in charge of the railway station, what orders he had, if any, for No. 14, and in reply to his inquiry received two clearance cards, one for himself and one for his engineer, Hardy. These clearance cards read:

"I have no orders for your train. This does not interfere with or countermand any orders you may have received."

For months prior to the date in question, No. 14 when it reached Brush received an order which gave the west-bound passenger train No. 1 the right of way over the east-bound passenger train No. 14 between Akron and Brush. Upon being given the clearance cards, the conductor asked Overstreet how No. 1 was, and Overstreet answered that he did not know; that he had not heard. Just at this moment, the engineer, Hardy, came into the depot and inquired of the conductor, "How is No. 1?" to which the conductor replied, "I don't know," repeating to Hardy what Overstreet had said. The conductor thereupon handed to Hardy the clearance card which Hardy was to receive, and started for the door, inquiring again of Overstreet as he went how No. 1 was, but did not hear Overstreet's answer to this last question. Hardy went into the waiting room and inquired of Overstreet how No. 1 was running, and Overstreet told him he had not heard from No. 1; the dispatcher was using the wires. One Edison, an agent for a Denver transfer company, who frequently went as

far east as Brush on No. 14 and returned therefrom in the line of his duties, alighted at Brush on this particular Sunday, walked into the depot, and inquired of Overstreet about No. 1, upon which train he was to return to Denver, and was told by Overstreet that he had not heard from No. 1; that the dispatcher was using the wires.

Having their clearance cards, Hardy boarded his engine, the conductor gave his signal for departure, and train No. 14 proceeded eastward out of Brush. During all this time while train No. 14 was at Brush and before it had arrived there, there was in the depot at that place an order for train No. 14, reversing the rights of trains Nos. 14 and 1 between Akron and Brush, making train No. 1 the "superior" and train No. 14 the "inferior" between those two points.

It had been the practice of the Railway Company prior to the day in question, when the order reversing the rights of these trains was sent to Brush for delivery to train No. 14, to send a duplicate thereof to Akron for delivery to train No. 1. On March 11, 1906, this practice was observed, and the conductor and engineer of train No. 1 received the duplicate order at Akron. The form number of the order mentioned was "19" and the order was addressed to the conductor and engineer of train No. 1, and read: "Number 1, Eng. 2711, has right over Number 14, Akron to Brush * * * [Signed] C. L. E.," which were the initials of C. L. Eaton, superintendent of the Railway Company at McCook, Neb. The order spoken of was equivalent to telling the conductor and engineer of train No. 1 that train No. 14, which had become "inferior," must stay at Xenia until they arrived there. This order not having been delivered to the conductor and engineer of train No. 14, it did not stay at Xenia, but passed by that point, as, under the orders which its crew had, it was bound to do. Each train, following the orders that it had, met in a head-on collision some 3 miles west of Akron, resulting in personal injury to Richardson.

At the trial, counsel for Richardson maintained that the Railroad Company was negligent in using an order known as form No. "19" instead of an order known as No. "31," to reverse the rights of these trains. The two orders read precisely alike, but the difference was that a "31" order must be signed by the conductor who received it and his train could not proceed until the agent had wired the train dispatcher that the conductor had so signed it and the dispatcher had wired back the word, "Complete." A No. "19" order, when received by the operator at any particular station from the train dispatcher, is repeated back to the dispatcher, and then delivered to the conductor and engineer of the train, without any information going to the dispatcher from the operator that the conductor has signed the order. The rules of the Railway Company provided for both forms of orders, but no rule provided when one should be used in preference to the other. It had been the practice of the Railway Company for some time, at least months, to use a No. "19" order to reverse the rights of the particular trains in question. The evidence showed that a No. "19" order was just as effective for the purpose mentioned as a No. "31" order, if delivered.

In the view we take of the case, we shall assume for the purpose of decision that there was evidence from which the jury might find that Richardson was an employé of both the Railway Company and Express Company at the time he received his injuries, and that the facts appearing at the trial would make the defendant Railroad Company liable for any damages for which the evidence might show the Railway Company responsible.

The court, upon the question of negligence, charged the jury as follows:

"If you find from the evidence that the Chicago, Burlington & Quincy Railway Company permitted its train dispatcher on March 11, 1906, and for some time prior thereto, to use on said railroad the form of order known as form No. '19' for the purpose of restricting the superiority which train No. 14 had over train No. 1, and that the use of said form was a dangerous practice and one which was liable in the event of forgetfulness of an operator to cause a collision, and that said Railway Company knew, or in the exercise of ordinary care could or would have known, that a collision was liable to occur from the use of such form of order, then and in that event the use of form No. '19' for such a purpose was negligence on the part of the Railway Company."

Upon the question of proximate cause, the court charged the jury as follows:

"The court instructs the jury that a verdict for the plaintiff cannot be rendered in this case unless you first find from the evidence that the cause of the collision of the two trains was the failure of the Railway Company to send a '31' order instead of a '19' order to Brush to restrict the rights of No. 14 between Akron and Brush."

[1] In so charging the jury, the court eliminated from the case all questions of negligence except the using of order No. "19" to reverse the rights of trains Nos. 1 and 14. The object sought by the trial, however, was not to ascertain whether it is better railroading to use order No. "31" to reverse the rights of trains, but to ascertain if the Railway Company had been guilty of any negligence which was the proximate cause of Richardson's injuries. At this point we must not confound negligence with proximate cause. Assuming that the finding of the jury, that the Railway Company was negligent in using a No. "19" order under the circumstances mentioned, is supported by the evidence, it by no means follows that this negligence was the proximate cause of the injuries received by Richardson. Order No. "19," from the time it left the hands of the train dispatcher to the time it arrived at Brush, had been the proximate cause of no injury. If delivered, it could not have been the proximate cause of any injury. At Brush, however, the course of the order was interrupted by an independent cause, namely, the failure of Overstreet, the agent, to deliver the same to the conductor and engineer of train No. 14. There was nothing in the order which caused or invited the negligence of Overstreet. The question then is clearly presented whether the use of order No. "19" by the train dispatcher, or the failure to deliver said order to the conductor and engineer of train No. 14 by Overstreet, the agent at Brush, was the proximate cause of the collision of trains Nos. 1 and 14.

In Milwaukee & St. Paul Railway Company v. Kellogg, 94 U. S.

469, 475 (24 L. Ed. 256) Mr. Justice Strong, in delivering the opinion of the court, said:

"The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." .

In Atchison, etc., Railway Co. v. Calhoun, 213 U. S. 1, 7, 29 Sup. Ct. 321, 322 (53 L. Ed. 671), Mr. Justice Moody, in delivering the opinion of the Supreme Court, said: .

"Few questions have more frequently come before the courts than that whether a particular mischief was the result of a particular default. It would not be useful to examine the numerous decisions in which this question has received consideration, for no case exactly resembles another, and slight differences of fact may be of great importance. The rules of law are reasonably well settled, however difficult they may be of application to the varied affairs of life. In this case undoubtedly the plaintiff's injury was traceable to the original negligence, in the sense that it would not have occurred if the plaintiff had not been separated from his mother. Nevertheless, that negligence may not be the cause of the injury, in the meaning which the law attributes to the word 'cause' when used in this connection. The law, in its practical administration, in cases of this kind, regards only proximate or immediate and not remote causes, and in ascertaining which is proximate and which remote refuses to indulge in metaphysical niceties. Where, in the sequence of events between the original default and the final mischief, an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause. Insurance Co. v. Tweed, 7 Wall. 44, 52 [19 L. Ed. 65]."

[2] In Little Rock & M. R. Co. v. Barry, 84 Fed. 944, 950, 28 C. C. A. 644, 650 (43 L. R. A. 349), Judge Sanborn, in delivering the opinion of this court, said:

"An injury that is not the natural consequence of an act or omission, and that would not have resulted but for the interposition of a new and independent cause, is not actionable. Railway Co. v. Elliott, 12 U. S. App. 381, 386, 5 C. C. A. 347, 350, 55 Fed. 949, 952 [20 L. R. A. 582]; Finalyson v. Milling Co., 32 U. S. App. 143, 151, 14 C. C. A. 492, 496, 67 Fed. 507, 512; Railway Co. v. Bennett's Adm'x, 32 U. S. App. 621, 16 C. C. A. 300, 69 Fed. 525; Railway Co. v. Callaghan, 12 U. S. App. 541, 550, 6 C. C. A. 205, 210, 56 Fed. 988, 993; Railway Co. v. Moseley, 12 U. S. App. 601, 609, 6 C. C. A. 641, 646, 57 Fed. 921, 926; Insurance Co. v. Melick, 27 U. S. App. 547, 557, 12 C. C. A. 544, 550, 65 Fed. 178, 184 [27 L. R. A. 629]."

In Cole v. German Savings & Loan Society, 124 Fed. 113, 115, 59 C. C. A. 593, 595 (63 L. R. A. 416) Judge Sanborn, in delivering the opinion of this court, said:

"An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever, of the injury. An

injury that results from an act of negligence, but that could not have been foreseen or reasonably anticipated as its probable consequence, and that would not have resulted from it, had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable. Such an act of negligence is the remote, and the independent intervening cause is the proximate, cause of the injury. A natural consequence of an act is the consequence which ordinarily follows it—the result which may be reasonably anticipated from it. A probable consequence is one that is more likely to follow its supposed cause than it is to fail to follow it. Chicago, St. P., M. & O. Co. v. Elliott, 55 Fed. 949, 952, 5 C. C. A. 347, 350, 20 L. R. A. 582; Railway Co. v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256; Hoag v. Railroad Co., 85 Pa. 293, 298, 299, 27 Am. Rep. 653."

In American Bridge Co. v. Seeds, 144 Fed. 605, 609, 75 C. C. A. 407, 411 (11 L. R. A. [N. S.] 1041), Judge Sanborn, in delivering the opinion of this court, said:

"There is no duty imposed upon a master to anticipate breaches of duty on the part of his servants, but he may lawfully reckon the natural and probable result of his actions upon the supposition that his servants will obey the law and faithfully discharge their duties. The legal presumption is that they will do so, and this is the only practicable basis for the measurement of the acts, rights, or remedies of mankind. Little Rock & Memphis R. R. Co. v. Barry, 84 Fed. 944, 950, 28 C. C. A. 644, 650, 43 L. R. A. 349; Cole v. German Sav. & Loan Soc., 59 C. C. A. 593, 599, 124 Fed. 113, 119, 63 L. R. A. 416."

Judge Cooley, in his work on Torts (vol. 1 [3d Ed.] p. 99), uses the following language:

"It is not only requisite that damage, actual or inferential, should be suffered, but this damage must be the legitimate sequence of the thing amiss. The maxim of the law here applicable is that in law the immediate, and not the remote, cause of any event is regarded; and in the application of it the law rejects, as not constituting the foundation for an action, that damage which does not flow proximately from the act complained of. In other words, the law always refers the injury to the proximate, not the remote, cause. The explanation of this maxim may be given thus: If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote. The chief and sufficient reason for this rule is to be found in the impossibility of tracing consequences through successive steps to the remote cause, and the necessity of pausing in the investigation of the chain of events at the point beyond which experience and observation convince us we cannot press our inquiries with safety. To the proximate cause we may usually trace consequences with some degree of assurance; but beyond that we enter a field of conjecture, where the uncertainty renders the attempt at exact conclusions futile. A writer on this subject has stated the rule in the following language: If the wrong and the resulting damage are not known by common experience to be naturally and usually in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action." Teis v. Smuggler Mining Co., 158 Fed. 260, 264, 85 C. C. A. 478, 15 L. R. A. (N. S.) 893.

Under the decisions above quoted and the undisputed facts in evidence, the negligence of Overstreet, the agent at Brush, in failing or refusing to deliver order No. "19," which he had, to the conductor and engineer of train No. 14, was the proximate cause of the collision, and there is no evidence upon which the jury would be warranted in find-

ing to the contrary. The finding of the jury that the use of order No. "19" instead of order No. "31" was the proximate cause could have been based upon nothing but a guess or speculation, for the reason that, in order for the jury to find that the use of order No. "19" was the proximate cause, they would have been obliged to find not only that the negligence of Overstreet was not the proximate cause, but that no person connected with the execution and delivery of order No. "31," had it been used, would have been negligent. The jury was not authorized to speculate or guess that, if order No. "31" had been used, no person connected with its execution and delivery would not have been negligent. Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Great Northern Ry. Co. v. Johnson, 176 Fed. 328, 99 C. C. A. 618; Missouri, K. & T. Ry. Co. v. Foreman, 174 Fed. 377, 98 C. C. A. 281.

The case was tried to the court below upon the theory that there was evidence of negligence on the part of the Railway Company in two particulars, namely: (a) The negligence of Overstreet, the agent at Brush, in failing to deliver order No. "19" to train No. 14, which was then at Brush; and (b) the failure of the train dispatcher to send a No. "31" order instead of a No. "19" order.

At the close of the plaintiff's evidence, counsel for the Railroad Company moved for a nonsuit, for the reason that the proximate cause of the accident was the failure of the station agent at Brush, Overstreet, to deliver to the conductor of train No. 14 order No. "19," or, stated in another way, the giving by Overstreet to the conductor of the clearance card, and that if Richardson was an employé of the Railway Company at this time then the accident was caused by his fellow servant, and no written notice was served by the plaintiff as provided by section 2061, Revised Statutes of Colorado 1908, and that the action had not been brought within two years from the occurrence of the accident, as provided by that section.

At the close of all the testimony, counsel for the Railroad Company moved for a directed verdict, based on the reasons theretofore assigned for a nonsuit, and again stated his position with reference to the proximate cause of the accident. After denying the motion for a directed verdict, the court, when it came to charge the jury, confined them by the instructions given to the question as to whether the Railway Company was or was not negligent in using a No. "19" order to reverse the rights of trains Nos. 1 and 14; the court saying:

"The complaint further charges that the Railway Company was guilty of negligence in not enforcing such an order; so your inquiry is confined, not to a failure on the part of the Railway Company in not making or promulgating such rules, but it is confined to the question as to whether or not it was negligence on its part in not enforcing rule as to order No. '31' which it did make and promulgate—enforcing it—enforcing the use of it under the conditions and circumstances which you find existed in this particular case."

Counsel for the Railroad Company also excepted to that portion of the charge of the court which submitted the question of proximate cause to the jury.

Being of the opinion that the negligence of Overstreet, the agent at Brush, was the proximate cause of the injuries to Richardson, the liability of the Railway Company for such negligence necessarily arises. This question was directly raised by the motion for a directed verdict, above mentioned, and ruled upon adversely to the Railroad Company. While the trial court did not submit the case to the jury upon the theory that Overstreet was negligent, still, as the liability of the Railway Company for such negligence would necessarily arise if a new trial is granted, we ought to express an opinion on that phase of the case.

[3] We are clearly of the opinion that Overstreet, the operator and agent at Brush, and Richardson, were both servants of the Railway Company in the operating department, and therefore were fellow servants. Railway Co. v. Baugh, 149 U. S. 384, 13 Sup. Ct. 914, 37 L. Ed. 772; Northern Pac. Ry. Co. v. Dixon, 194 U. S. 338, 343, 24 Sup. Ct. 683, 48 L. Ed. 1006; Northern Pacific Ry. Co. v. Dixon, 139 Fed. 737, 71 C. C. A. 555; Deye v. Lodge & Shipley, etc., 137 Fed. 480, 483, 70 C. C. A. 64; Illinois Central R. Co. v. Bentz, 99 Fed. 657, 40 C. C. A. 56; Railway Company v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181; Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322, 27 L. Ed. 1003; Clifford v. Old Colony R. R. Co., 141 Mass. 564, 6 N. E. 751; Sherman v. Rochester & Syracuse R. Co., 17 N. Y. 153; St. Louis, etc., Ry. Co. v. Needham, 63 Fed. 107, 110, 111, 112, 11 C. C. A. 56, 25 L. R. A. 833; Quebec Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397, 33 L. Ed. 656; Northern Pac. Ry. Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983, 38 L. Ed. 1009; Northern Pac. Ry. Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994; Texas & P. Ry. Co. v. Bourman, 212 U. S. 541, 29 Sup. Ct. 319, 53 L. Ed. 641; O'Connor v. Railway Co., 137 Fed. 505, 70 C. C. A. 87; Florence & C. C. Ry. Co. v. Whipps, 138 Fed. 13, 17, 70 C. C. A. 443.

[4] We are also of the opinion that the failure to give the notice specified in the motion for a directed verdict relieved the Railway Company of any liability under the laws of Colorado for the negligence of a fellow servant. Lange v. Union Pacific R. Co., 126 Fed. 338, 62 C. C. A. 48; Simerson v. St. Louis & S. F. R. Co., 173 Fed. 612, 97 C. C. A. 618; Denver & R. G. R. Co. v. Wagner, 167 Fed. 75, 92 C. C. A. 527; Otis Elevator Co. v. Cliff, 200 Fed. 922, recently decided by this court.

For the error in submitting the question of proximate cause to the jury, and in refusing to direct a verdict for the Railroad Company, the judgment below must be reversed, and the case remanded to the District Court, with direction to grant a new trial.

And it is so ordered.