HARRELL v. ATLAS PORTLAND CEMENT CO. *

(Circuit Court of Appeals, Eighth Circuit.   March 26, 1918.)

No. 4994.

MASTER AND SERVANT ☞193(3)—INJURIES TO SERVANT—FELLOW SERVANTS.
        Where a railroad company transported rock from a cement company's quarry to its plant, and employés of the railroad company who took loaded cars from and empty cars into the quarry pit over the tracks of the cement company worked in conjunction with that company's servants in loading and removing the cars, and all were under the direction of the cement company, such employés, though hired and paid by the railroad company, were servants of the cement company and fellow servants of the employés of that company, for one who has the right to control the doing of the work is the "master."
        [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Master.]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by George Edward Harrell against the Atlas Portland Cement Company. Judgment for defendant, and plaintiff brings error. Affirmed.

John G. Parkinson, of St. Joseph, Mo. (James W. Mytton, Allen May, and Richard M. Duncan, all of St. Joseph, Mo., on the brief), for plaintiff in error.

George A. Mahan, of Hannibal, Mo. (A. R. Smith and Dulany Mahan, both of Hannibal, Mo., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges.

SANBORN, Circuit Judge.   Mr. Harrell sued the Atlas Portland Cement Company for damages that resulted, as he averred, from a personal injury inflicted upon him, as he alleged, by the negligence of its servants, and especially of its engineer, who was operating its steam

shovel. The company answered that, if the plaintiff suffered any injury on account of the negligence of any of its servants, they were his fellow servants and the company was not liable therefor. At the close of the evidence for the plaintiff, the court directed the jury to return a verdict for the defendant on the ground that the plaintiff's injury appeared to have been caused by the negligence of his fellow servants. This is the ruling of which the plaintiff complains, and it was founded upon these facts: The cement company was, and for more than six years had been, a corporation engaged in the manufacture and sale of cement at Ilasco, Mo. It had a large manufacturing plant there where it crushed rock, burned it, and made it into cement. About a mile from its manufacturing plant it had quarries from which it took the rock and transported it on cars over railroad tracks to its plant. It had the Hannibal Connecting Railway Company do all its railway work, such as loading the rock onto cars, pulling them away from the steam shovel, and turning the cars over to other men who took them over the railway tracks to the crusher and the mill. The quarry in which the plaintiff was injured contained a solid body of rock about 30 feet in height, and the rock used was separated from this solid body by dynamite and was then loaded into the cars by means of a steamshovel and crane operated by an engineer and men who were employed and paid by the cement company. The plaintiff was employed and paid by the Hannibal Connecting Railway Company. The solid rock or cliff of the quarry faced north. Two parallel railway tracks, near enough to each other to permit the shovel and crane to stand on a car upon one of them and load rock onto a car on another, extended north from the face of the cliff in the quarry. These tracks were moved by the cement company from time to time as the rock was removed, and there were other tracks in the quarry which were likewise used and moved when the work required. The plaintiff was the switchman of the crew consisting of an engineer, fireman, and this switchman, which was moving the empty cars in from the entrance to the quarry to the face of the cliff, taking the cars away when loaded, and turning them over to another crew which took them from the quarry to the plant. The cars were handled in this way. The shovel and crane were placed upon one of the two tracks so that the shovel would reach the rock which had been separated or loosened by the dynamite and was lying against the face of the cliff. Several empty cars in a train were backed in onto the track by the side of the shovel, and the rear car was placed where it could be loaded by the use of the shovel and crane. When that car was loaded, the cars were pulled out, the loaded car was set on the track back of the shovel, or elsewhere upon an empty track in the quarry, and the other cars were backed in, one of them was loaded, the cars were pulled out, and so on until four or five cars were loaded, when the crew put them into a train and pulled them out of the quarry and turned them over to the crew which took them to the plant.

The engineer of the steam shovel directed the plaintiff when and where the cars to be loaded should be placed, when a loaded car should be taken out, and when the cars, although not loaded, should

be removed, and he also directed the operation of the steam shovel. The plaintiff controlled the movement of his crew and caused it to place each car to be loaded when and where the engineer directed him to place it and caused his crew to remove it when the engineer notified him it was loaded and whenever the engineer directed him to remove it. The plaintiff had been engaged in this same work for more than four years. Ordinarily when a car was to be loaded the engineer would direct the plaintiff where to place the car. He would place it. The engineer by the use of the shovel or dipper would seize a portion of the rock which had been loosened by the dynamite, swing the dipper over the car, and drop its contents into it. When the car was loaded, he would notify the plaintiff that it was ready for removal, and the plaintiff would cause his crew to pull it out. Sometimes the dipper would be used to rake or pull down large quantities of rock which rolled out to some distance from the face of the cliff. When the engineer was about to use the shovel for this purpose, if the cars were in near the cliff, it was his custom to direct the plaintiff to take them out of the way; if there was nothing in there but the men, he would tell the men to look out. If the plaintiff was near handling his crew or cars, he or one of his crew would notify him. At the time of the injury to the plaintiff, he had been notified that a car had been loaded, had caused his crew to attach their engine and empty cars to the loaded car to pull it away from the cliff, had signaled the engineer of his crew to pull the car out, had placed himself on the step of the car, and had seized the grab iron on the corner of the car to enable him to ride on it, and the car had started, when, without any notice to him, the engineer of the steam shovel caused it to pull down a large quantity of loose rocks which struck and seriously injured him.

The facts of this case which have now been recited leave no doubt that the plaintiff and the members of his crew, who were employed and paid by the Hannibal Connecting Railway Company, and the engineer and his crew who were operating the steam shovel and who were employed and paid by the cement company, were fellow servants, unless, at the time of the injury and in the doing of the acts they were respectively performing, the plaintiff and his crew were acting under the direction and control of the railway company while the engineer and his crew were acting under the direction and control of the cement company. For they were all engaged in the common employment of quarrying for the cement company and removing rock from its quarry near Ilasco to its plant. That the engineer and his crew were acting under the direction and control of the cement company and were its servants is conceded. But it is contended that the plaintiff was directed and controlled in his acts by the railway company and was its servant. Whether he was the servant of the cement company or of the railway company is not determined by the fact that he was employed and paid and might be discharged by the railway company, but by the answer which the facts give to the question: Did the railway company or the cement company have the exclusive power to direct and control his action in doing the work he was performing at the time of his injury? Standard Oil Co. v. Anderson, 212 U. S. 215,

220, 221, 29 Sup. Ct. 252, 53 L. Ed. 480; Brady v. Chicago & G. W. Ry. Co., 114 Fed. 100, 107, 52 C. C. A. 48, 55, 57 L. R. A. 712; Standard Oil Co. v. Parkinson, 152 Fed. 681, 82 C. C. A. 29; Murray v. Dwight, 161 N. Y. 301, 314, 55 N. E. 901, 48 L. R. A. 673; Jones v. Scullard, L. R. (2 Q. B. Div. 1898) 565; Donovan v. Construction Syndicate, L. R. (1 Q. B. Div. 1893) 629. In the last case Lord Bowen said:

"We have only to consider in whose employment the man was at the time when the acts complained of were done, in this sense, that by the employer is meant the person who has a right at the moment to control the doing of the act."

In the first case cited (212 U. S. 220, 221, 29 Sup. Ct. 254 [53 L. Ed. 480]) the Supreme Court said:

"It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work."

The court below was of the opinion that the facts of this case placed it with the first case stated in the foregoing quotation, and a deliberate consideration of the evidence has failed to convince that it was in error. The entire work and undertaking was that of the cement company. The only evidence of its relation to the railway company was that it had the railway company do all the railway work such as loading the rock, pulling it from the steam shovel, and turning the cars over to other men to take up to the crusher and the mill. When we come to the work which the plaintiff was doing when he was injured, the evidence is that for more than four years he was doing this work of placing empty cars when and where the engineer of the cement company directed him to place them, removing them and turning them over to the transporting crew when the engineer told him, that he respectively placed and removed them at other times when the enginer directed him to do so, such as when there was danger of injury to the crews or those near them by raking down the rock, while there is no evidence that the railway company ever controlled or directed him in the matter of how or when he should do his work of placing, handling, and removing the cars during the four years of his service. And the conclusion its that in the conduct of the work the plaintiff was performing, at the time of his injury, the cement company had and was

exercising the exclusive power to control and direct how, when, and where he should do his work, that he was its servant and a fellow servant of the engineer and the members of the latter's crew. Otis Elevator Co. v. Cliff, 200 Fed. 922, 119 C. C. A. 218; Chicago, B. & Q. R. Co. v. Richardson, 202 Fed. 836, 844, 121 C. C. A. 144, 152; Philadelphia & Reading Coal Co. v. Barrie, 179 Fed. 50, 54, 102 C. C. A. 618, 622; Geo. A. Fuller Co. v. McCloskey, 228 U. S. 194, 202, 33 Sup. Ct. 471, 57 L. Ed. 795; Fisher v. Cleveland, C., C. & St. L. Ry. Co. (C. C.) 169 Fed. 956, 959; Coughlan v. Cambridge, 166 Mass. 268, 44 N. E. 218; Higgins v. Western Union Telegraph Co., 156 N. Y. 75, 77, 79, 50 N. E. 500, 66 Am. St. Rep. 537; Wyllie v. Palmer, 137 N. Y. 248, 257, 33 N. E. 381, 19 L. R. A. 285.

Let the judgment below be affirmed.