## THE DAISY.

### GREIME v. FREEMAN.

### (Circuit Court of Appeals, Ninth Circuit.   May 1, 1922.)

### No. 3807.

1. Seamen ☞29(2)—Ship held not liable for injuries to seaman in loading, un-
less tackle would not reach road usually reached by ship's tackle.

Where one of the two falls or cables used in loading lumber on a vessel
was too short to reach certain lumber, and was detached and held by a
stevedore while the lumber was moved by the other fall, but slipped
out of his hand and struck a seaman, ship *held* not liable, unless the
falls were too short to reach a load within the distance usually reached
by the ship's tackle, or would not reach a specified distance, if there
was a specification of distance.

2. Seamen ☞29(2)—Accident causing injury held due to carelessness in opera-
tion of winch, and not to defective appliance.

The slipping of a fall or cable used in loading lumber on a vessel from
the hand of a stevedore, who was holding it, causing injury to a seaman
struck by it, *held* due to some carelessness in operating   winch, and not
to any defective or improper appliance.

3. Seamen ☞29(2)—Ship not liable for injuries from misuse of proper appliance.

For misuse of a proper winch in loading lumber on a vessel, causing in-
jury to a seaman, the ship is not liable.

4. Seamen ☞29(3)—Stevedore held fellow servant of seaman, and ship not
liable for his negligence.

A stevedore, assisting in loading lumber on a vessel from the dock, was
a fellow servant of a seaman storing the lumber in the hold of the ves-
sel, and the ship was not liable to the seaman for his negligence.

Appeal from the District Court of the United States for the First
Division of the Northern District of California; Maurice T. Dooling,
Judge.

Libel in admiralty by Frederick H. Greime against the steam schoon-
er Daisy, her engines and boilers, tackle, apparel, and furniture,
claimed by S. S. Freeman.  From a judgment for claimant, libelant
appeals.  Affirmed.

In April, 1920, Greime, a seaman, while stowing lumber in the hold of the
steam vessel Daisy, was struck and injured by a hook attached to the end of
a wire fall.  Libel against the ship was dismissed, and he appealed.  The
equipment consisted of two booms, 56-foot round timbers, footed to the ship's
mast.  The upper end of the inshore boom extended over the dock, while the
offshore boom swung over the ship's offshore rail.  Close to the base of the
mast was a winch of the friction type, with a driving cogwheel cast upon the
middle point of a shaft, with drums loose on the shaft.  The friction, made of
wood, was secured to the sides of the cogwheel, with the smaller end toward
the near spool.  The spools were operated by separate levers, which threw
the spools in against the friction.  Wire cables or falls wound around each
spool and ran through pulley blocks along to the upper ends of the booms;
thence to a common cargo hook.  In the operation of the winch, to release the
drum the winchman should slacken on the lever, and the drum, if working
properly, will automatically release itself from the friction.  To lift a load
the drum is thrown against the friction and revolves with it, and as the drum
revolves the fall is wound; to lower a load the drum is thrown off friction
and turned in the opposing direction by the weight of the load, the fall "pay-
ing off" from the drum.  Both ends of the wire falls are usually attached to

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the chain which holds the cargo hook. In loading, the practice is to take the lumber nearest the side of the ship first, then to take what is piled up further out, and, if the offshore fall is too short to reach the lumber, usually the offshore fall is disengaged and attached to any pile near enough, or it may be that a stevedore will hold the rope in his hand during the time the load is hauled over the wharf by the inshore fall to a point within reach of the offshore fall. In the present instance, a far pile of lumber was being taken by the inshore fall, and in some way the end of the offshore fall was pulled from the hands of the stevedore, who was holding it, and swung over the rail down into the hold, and injured the appellant.

H. W. Hutton, of San Francisco, Cal., for appellant.

Farnham P. Griffiths and McCutchen, Olney, Willard, Mannon & Greene, all of San Francisco, Cal., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). Appellant's position is that there was a failure to supply a proper appliance, in that the ship should have furnished falls long enough to reach without the need of unhooking the offshore one, when moving the pile of lumber. The falls were the same length, but, of course, the offshore one would not reach a load, if it laid as far away from the inshore fall as that fall could reach.

[1, 2] We cannot see that the ship should be held liable, unless the two falls were too short to reach a load placed within such distances as are usually included as within the reach of the ship's tackle, or unless they would not reach a specified distance, if there was a specification of distance. Witnesses said that the booms of the Daisy were 56 feet long, and that the customary length of a fall is three times the length of the boom, and that the falls were of usual length. This being so, they were long enough to lift a cargo delivered within 60 feet without disconnecting either fall. But, as the lumber taken aboard when appellant was hurt was more than 60 feet away from the side of the ship, it became necessary to use the only available fall to handle the cargo, or to refuse to take the lumber. The load was taken, and a stevedore was directed to hold the hook. It is plain that in such a practice lack of care in operating the winch may cause a turning of the shaft, which would give a slight pull on the offshore fall, and pull the hook out of the hands of the person holding it. Another possible pull might come because of even slight sticking of the drum on the friction. Here the latter contingency is hardly to be accepted, in view of the testimony of the winchman that the winch was working properly; and, moreover, if the drum of the offshore fall were in friction, the offshore hook would probably not have been drawn out to the point on the dock where it was held by the stevedore. Therefore the most satisfactory conclusion is that the accident was caused, not by any defective or improper appliance, but by some carelessness in operating the winch.

[3, 4] For misuse the ship would not be liable. That the stevedore who held the hook was a fellow servant of libelant is also well established, and that the ship owner is not liable for the negligence of the fellow servant is equally well established. Western Fuel Co. v. Garcia

(C. C. A.) 260 Fed. 839; The Hoquiam, 253 Fed. 627, 165 C. C. A. 253; Harrell v. Atlas Portland Cement Co., 250 Fed. 83, 162 C. C. A. 255; The Persian Monarch, 55 Fed. 333, 5 C. C. A. 117; The Frank D. Stout (C. C. A.) 276 Fed. 382; Roebling's Sons Co. v. Erickson (C. C. A.) 261 Fed. 986.

We find no ground for reversal, and affirm the judgment.

Affirmed.