## ARMOUR & CO. v. HARCROW.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1914.)

No. 4068.

*(Syllabus by the Court.)*

1. NEGLIGENCE (§ 136*)—TRIAL—DIRECTION OF VERDICT—EVIDENCE.

When the evidence leaves the averment that an injury was caused by an act of negligence to speculation, without substantial evidence to sustain it, it is the duty of the court to instruct the jury to return a verdict for the defendant.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

2. NEGLIGENCE (§§ 58, 59*) — ACTIONABLE NEGLIGENCE — PROXIMATE CAUSE — "NATURAL CONSEQUENCE"—"PROBABLE CONSEQUENCE."

An injury which is the natural and probable cause of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury that could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause or no cause whatever of the injury. The "natural consequence" of an act is the consequence which ordinarily follows it, the result which may reasonably be anticipated from it. A "probable consequence" is one that is more likely to follow its supposed cause than it is not to follow it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 71, 72; Dec. Dig. §§ 58, 59.*

For other definitions, see Words and Phrases, First and Second Series, Natural Consequences; Probable Consequence.]

3. MASTER AND SERVANT (§ 265*)—INJURY TO SERVANT—RES IPSA LOQUITUR.

The doctrine of res ipsa loquitur is inapplicable to cases between master and servant brought to recover damages for negligence, and the burden is on the plaintiff to allege and prove that the act of negligence of which he complains was the proximate cause of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*

Application of doctrine of res ipsa loquitur in actions for injuries to servants, see note to Carnegie Steel Co. v. Byers, 82 C. C. A. 121.]

4. MASTER AND SERVANT (§ 285*)—INJURY TO SERVANT—SAFE PLACE TO WORK —PROXIMATE CAUSE—SUFFICIENCY OF EVIDENCE.

The plaintiff, a carpenter, was employed boring holes and inserting lag screws into joists, which rested on iron corbels on posts, through holes in the arms of the corbels about six inches from the posts. He stood on a ladder, with his face upturned, within about two feet of the corbel, boring a hole or inserting a lag screw, when a piece of rust or rusty iron fell from the corbel into one of his eyes and blinded it. The work in process was the repair of a beef extract room, by taking out old joists and putting in new ones. He knew that the corbels were rusty, and that dust and pieces of rust fell when the old joists were taken out. The room was so dark that he could not see the holes in the corbels, but he found them by feeling for them and inserting his fingers in them, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

successfully bored six or eight holes, and inserted lag screws, when, after working from 10 a. m. until 5 p. m., the accident happened. At 11 in the forenoon and at 1 in the afternoon he had asked his foreman for more light, and had told him it was dangerous to work without it, and the foreman had promised to furnish light, but did not.

*Held*, here was no substantial evidence that the lack of light was the proximate cause of the accident, that the evidence left the issue whether or not the injury was caused by the lack of light to the mere speculation of the jury, and the court should have given a peremptory instruction for the defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1002, 1003, 1007, 1008, 1016, 1035, 1043, 1053; Dec. Dig. § 285.*]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by William Harcrow against Armour & Co. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to grant a new trial.

William G. Holt, of Kansas City, Kan. (C. Angevine and J. K. Cubbison, both of Kansas City, Kan., on the brief), for plaintiff in error.

L. C. True and E. C. Little, both of Kansas City, Kan., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge. Armour & Co., a corporation, complain that the court below erroneously refused to direct a verdict in its favor at the close of the evidence and permitted a judgment against it on the verdict of the jury in this case for $2,750.

[1, 4] Counsel for the defendant in error, the plaintiff below, ask in their brief in reply to that of the defendant below that the writ of error be dismissed, because in the printed record the case is entitled on the first page thereof and at the top of each printed page thereafter Armour Packing Co. v. William Harcrow, the bill of exceptions bears no title, but recites that at the opening of the trial Messrs. Angevine, Cubbison, and Holt appeared for Armour Packing Company, and the clerk certified that the copies of the bill of exceptions and other proceedings in the transcript were copies from the record of the proceedings in "Case No. 9030, C. C., entitled William Harcrow v. The Armour Packing Company." They argue that these facts show that the record brought here is of the proceedings in a case against Armour Packing Company, while the writ of error challenges the trial in a case against Armour & Co. An examination of the printed transcript, however, discloses the facts that the complaint and amended answer, the petition for removal from the state court, the order of removal, the journal entry of the trial, which recites the names of the witnesses whose testimony is recorded in the bill of exceptions, the verdict and judgment, and the petition for the writ of error were entitled "William Harcrow v. Armour & Co.," that the bill of exceptions has no title in the printed record because a rule of this court requires the omission of its printing, and it is presumed to

have the same title as the pleadings, that Messrs. Angevine, Cubbison, and Holt, who are recited in the bill of exceptions as appearing for Armour Packing Company, signed the answer as attorneys for Armour & Co., removed the case from the state court for that company, procured the writ of error for that company and have acted for it throughout the proceedings, and that "Case No. 9030 C. C.," which the clerk of the court recites in his certificate is entitled "William Harcrow v. The Armour Packing Company," appears by the printed record to be the case of William Harcrow v. Armour & Co. by the number on the amended answer, on the journal entry of the trial, and on the journal entry of the verdict and judgment. There is, therefore, no doubt that the word "Packing" where it appears in the title in the printed record was inserted by a clerical error, the motion to dismiss the appeal is frivolous, and it is dismissed.

The action was for negligence. The only alleged negligence of the defendant submitted to the jury was a failure to provide sufficient light for the plaintiff to work by. The accident was the falling of something which the plaintiff did not see, but testified was rust or rusty iron, from an iron corbel, through a hole in which he was boring a hole or inserting a lag screw into a joist above it with his face upturned beneath it. The court charged the jury that, unless the plaintiff had proved that the accident and the injury to the plaintiff were directly caused by the defendant's failure to provide him sufficient light, he could not recover, and the defendant insists that it was the duty of the court to instruct the jury in its favor, because there was no substantial evidence that the lack of more light was the direct cause of the injury. The great preponderance of the evidence was that the room in which the plaintiff was working was sufficiently lighted, but the evidence to that effect is laid aside, and the case is considered and decided on the undisputed facts and the evidence for the plaintiff. The material facts of the case derived from these sources are these:

The defendant was engaged in repairing its beef extract room, which was 11 feet and 4 inches high from the floor to the joists and 110 feet long by 86 feet wide. There was at the time of the accident no ceiling to the room, and the employés of the defendant were removing the old and putting in new joists, which rested on iron corbels, each of which was supported by a post and had two arms or brackets, one extending each side of the post. In each of these arms and about 6 inches from the post there was a hole about three-eighths of an inch in diameter through which a lag screw was driven into the joist above the corbel about 3 inches to hold the joist in place. In the division of the labor of making these repairs the plaintiff was assigned to the duty of boring the holes in the new joists for these screws and screwing them up into their places. While doing this work he stood on a ladder, placed his bit through the holes in the corbels, bored the necessary holes in the joists and then inserted the lag screws. Plaintiff was a carpenter, and had been engaged in rough carpenter work for 14 years. He had assisted in remodeling and repairing old wooden structures, and had done such work as taking out old timbers and

inserting new ones. On the day of the accident he commenced boring holes and inserting screws at 10 a. m., and with an intermission for dinner worked until 5 p. m., when a piece of rust or rusty iron, as he believed, fell into his eye, from which it became blind. At the time of the accident his face was about 2 feet from the corbel. When he commenced work in the morning, he did not know the condition of the corbels and joists. He testified that:

"Every time I take out the old girders there would be dust—pieces of dust or rust fly off." "Q. Well, do you say you did or did not know that all the castings were rusty and the rust was liable to fall off the castings? A. Sure, the castings bound to be rusty. Q. Well, you knew that, didn't you? A. Couldn't think anything else but know they were rusty to some extent, but not shattering. Q. Not what? A. Not shattering, so a man couldn't work under them."

He testified that he had bored six or eight holes before the accident happened; that it was dark all day, so dark that he could not see the holes in the corbels; that he found the holes by feeling for them and inserting his fingers in them; that after that he inserted his bit in the holes and had no trouble in boring the wood; that about 11 o'clock he went to his foreman and told him he would have to have some light there—couldn't see how to do the work, and really dangerous for a man to work there—and the foreman said he would get lights; that he made a like complaint and received a similar answer about 1 in the afternoon; and that he would not have continued to work if the promises had not been made. The foreman never furnished more light. Was there any substantial evidence in the facts and testimony recited that insufficient light was the proximate or direct cause of the fall of the rust or rusty iron into the eye of the plaintiff?

[2] An injury which is the natural and probable cause of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury that could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause or no cause whatever of the injury. The natural consequence of an act is the consequence which ordinarily follows it, the result which may reasonably be anticipated from it. A probable consequence is one that is more likely to follow its supposed cause than it is not to follow it. Chicago, St. Paul, Mpls. & Omaha Ry. Co. v. Elliott, 55 Fed. 949, 952, 5 C. C. A. 347, 350, 20 L. R. A. 582; St. Louis, K. C. & C. R. Co. v. Conway, 156 Fed. 234, 237, 86 C. C. A. 1, 4; Teis v. Smuggler Mining Co., 158 Fed. 260, 266, 267, 85 C. C. A. 478, 484, 485, 15 L. R. A. (N. S.) 893; Chicago, Burlington & Quincy R. Co. v. Richardson, 202 Fed. 836, 841, 842, 121 C. C. A. 144, 149, 150; Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256; Hoag v. R. R. Co., 85 Pa. 293, 298, 299, 27 Am. Rep. 653; Cole v. German Savings & Loan Soc., 124 Fed. 113, 115, 59 C. C. A. 593, 595, 63 L. R. A. 416; Mella v. Northern S. S. Co. (C. C.) 162 Fed. 499, 512, 513.

[3] The plaintiff knew the corbels were rusty, he knew that dust or rust flew off when an old joist was removed, he knew where the

hole he was boring or in which he was inserting the screw was, and that if he placed his open eye directly beneath it the chips from his boring or from the insertion of the screw might fall upon it, and this knowledge imposed upon him the duty to use reasonable care to prevent such a result. According to his testimony the place was so dark he could not see the hole, but he had no trouble in finding it with his fingers and inserting his bit and screw therein. Concede that it was the natural and probable consequence of turning his face up to the corbel and opening his eyes beneath it, while he was boring or inserting the screw, that chips or rusty iron or rust would fall into it. It does not follow that this would have been more likely to happen in the dark than in the light, for if he could not see the hole in the dark, there was less inducement and reason for him to open his eyes beneath it in the dark than there would have been if there had been light enough to have enabled him to see it, and it is common knowledge that articles fall into and injure the eye in the light as well as in the dark. No one could have foreseen or have reasonably anticipated that the lack of light would cause a chip or a piece of rust or of rusty iron to fall into the plaintiff's eye, and the truth is that the facts of this case prove that the proximate cause of the injury was the boring of the hole or the insertion of the screw, while the plaintiff held his open eye beneath and within about 2 feet of the corbel on which he was operating, and there was no substantial evidence that the absence of light in any degree induced it, or that it would not have resulted in the same way if more light had been provided.

The accident did not tend to prove that it was caused by the absence of light. The plaintiff alleged, and the burden was on him to prove, that it was. The doctrine res ipsa loquitur is inapplicable to cases between master and servant brought to recover damages for negligence. Cryder v. Chicago, R. I. & P. Ry. Co., 152 Fed. 417, 419, 81 C. C. A. 559, 561; Chicago & N. W. Ry. Co. v. O'Brien, 132 Fed. 593, 596, 598, 67 C. C. A. 421, 424, 426. And where the evidence leaves the issue whether or not an injury was caused by an act of negligence to speculation without substantial evidence to sustain the averment that it was, it is the duty of the court to instruct the jury to return a verdict for the defendant. Patton v. Texas & Pacific R. R. Co., 179 U. S. 658, 663, 21 Sup. Ct. 275, 45 L. Ed. 361.

The judgment below must therefore be reversed, and the case must be remanded to the court below, with directions to grant a new trial.

It is so ordered.