DELAWARE & HUDSON CO. v. KETZ.

(Circuit Court of Appeals, Third Circuit. April 24, 1916.)

No. 2081.

1. TRIAL ⚙⟹219, 255(13)—INJURIES TO SERVANT—INSTRUCTIONS—PROXIMATE CAUSE—NECESSITY—REQUEST.

In an action for the death of a railroad employé, who fell from a bridge, where the evidence was not clear that the negligence of the company in leaving one side of the bridge unguarded was the proximate cause of the accident, it was error for the trial judge to pass over the subject of proximate cause with only an allusion to the fact that the jury must determine whether the death was the proximate result of defendant's negligence, without defining "proximate cause," though his attention was called to the subject by defendant's requests for instructions that the company was not liable, unless it had been guilty of negligence that was the proximate cause of the death.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 489, 639; Dec. Dig. ⚙⟹219, 255(13).]

2. MASTER AND SERVANT ⚙⟹276(2)—INJURIES TO SERVANT—EVIDENCE—PROXIMATE CAUSE.

In an action for the death of a railroad employé, who fell from a bridge one side of which was unguarded, testimony of the only witness to the accident that the employé crossed diagonally from the guarded to the unguarded side of the bridge, where he seemed to stumble and then fell, and that 24 hours later there was no obstruction on the bridge over which he could have stumbled, is not sufficient to warrant the jury in finding that the negligence of the company in leaving the side of the bridge unguarded was the proximate cause of the death.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959; Dec. Dig. ⚙⟹276(2).]

⚙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*In Error to the District Court of the United States for the Middle District of Pennsylvania; Charles B. Witmer, Judge.*

Action by Anna Ketz, administratrix, against the Delaware & Hudson Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial awarded.

W. J. Torrey and James H. Torrey, both of Scranton, Pa., for plaintiff in error.

R. L. Levy and Leon M. Levy, both of Scranton, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. The plaintiff, Anna Ketz, is the widow of George Ketz, who was drowned on the afternoon of Sunday, April 26, 1914. He had been working at a roundhouse of the Delaware & Hudson Company, and while on his way home fell from a bridge spanning the Lackawanna river between his place of work and the town of Carbondale. The bridge had been built and was maintained by the company primarily as a means of access to the roundhouse and other shops, although its use by the public was also permitted. In her statement of claim the plaintiff describes herself as the administratrix of her husband, and also as a citizen of Pennsylvania, declaring her husband also to have been a citizen of that state. She sues as his personal representative, in behalf of herself and their minor children, and describes the company as a citizen of New York. She then goes on to state that on April 26 the company was engaged in interstate commerce; that her husband also was so engaged as a servant of the company; and that, in order to enable its servants to reach and leave the roundhouse, the company furnished the bridge in question. She asserts that the bridge was dangerous, because it was provided with a guard rail or barrier upon only one of its sides; avers that her husband lost his footing, fell into the river from the unguarded side, and was drowned; and charges that the fall was due to the company's negligence in failing to protect the bridge adequately, and to "its failure to furnish a safe place to work and safe appliances in and about the place of his employment, and safe approaches and exits in and about the said place of employment."

There is no material dispute about the facts. Ketz had been in the company's service about a year; he was a pipe fitter, and was charged with the duty of repairing the pipes of such engines as might come into the roundhouse from time to time. The company operates a railroad running from Wilkes-Barre, Pa., into the state of New York, and is largely engaged in interstate commerce; but part of its business is intrastate, for example, the carriage of passengers between Wilkes-Barre and Carbondale, neighboring towns in the state of Pennsylvania. About 20 engines used the roundhouse as a place of storage or repair. Some of them were of the Mallet type, and were used to push trains upgrade from Carbondale to Ararat Summit; both these points are in Pennsylvania, but nearly all the trains went on from

Ararat into the state of New York. Some engines, however, were used only for passenger service between Carbondale and Wilkes-Barre, and on Sundays another engine might come in from a passenger train that was run on that day between New York state and Carbondale. At times still other engines might be sent in for unexpected repairs.

The bridge is a little more than 14 feet wide and about 114 feet long; it has a railing 4 feet high on the upper side, but on the lower side there was no guard, except a wheel rail, or block—a heavy timber about 9 inches high and 10 inches wide, fastened to the planks and running the length of the bridge. There were two of these wheel rails one on each side of the bridge, and the roadway between them is nearly 12 feet wide. On the day in question Ketz had been employed in the roundhouse, but no evidence was offered to show what he had been doing, or upon what engine. At 5 o'clock he started for his home in Carbondale. The daylight was ample, and he was familiar with the bridge, having crossed it many times during the year preceding. On this occasion, for some reason that is left in doubt by the meager evidence, he fell off the bridge from the lower or unguarded side and was drowned. The only witness of the occurrence was a woman, who was looking across the river from her kitchen window about 300 feet away, and saw Ketz approach the bridge, enter upon it close to the guard rail, and cross diagonally to the lower side. There he stumbled (as she thought), threw up his hands, and fell into the water. Twenty-four hours later she visited the spot, but found nothing that would account for his fall, and there is no other testimony concerning the condition of the roadway or the bridge. If the river had not been in flood, he would probably have escaped without serious mishap. A board sidewalk, more than 2 feet wide, runs along the street or highway on both sides of the river, and leads to and from the ends of the upper or guarded side of the bridge. Crossing was perfectly safe under all ordinary conditions. Another man preceded Ketz by a few feet, using the upper side of the bridge, and crossed without having his attention called to the accident.

The suit is brought under the Carriers' Liability Act of 1908 (Act April 22, 1908, c. 149, 35 Stat. 65, 4 Comp. Stat. § 8657 et seq.) and the federal questions presented by the statement of claim are whether the death occurred while the company was "engaged in commerce between any of the several states," and whether the deceased suffered death "while he [was] employed by such carrier in such commerce." On these subjects the evidence is scanty and not satisfactory, and the plaintiff is compelled to rely on such presumptions or inferences as are said to be warranted by the few facts in proof. The argument is thus outlined in her counsel's brief:

"1. A workman whose general employment is in the interstate commerce and intrastate commerce of a railroad is, generally speaking, engaged in interstate commerce, and is within the protection of the act.

"2. An employé who meets with injury while, generally speaking, engaged in interstate commerce, is within the protection of the act, and he does not lose the protection of the act unless it appears by affirmative evidence that he was engaged in intrastate commerce at the time that he came to his death."

We do not find it necessary to consider these propositions, or to examine the cases referred to by one side or the other. Railroad v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Railroad v. Glynn, 219 Fed. 148, 135 C. C. A. 46; Pedersen v. Railroad, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Horton v. Railroad & Navigation Company, 72 Wash. 503, 130 Pac. 897, 47 L. R. A. (N. S.) 8; Lamphere v. Railway Company, 196 Fed. 336, 116 C. C. A. 156, 47 L. R. A. (N. S.) 1; Erie R. R. v. Jacobus, 221 Fed. 336, 137 C. C. A. 151; Railroad v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1915C, 159; Railroad v. Davide, 210 Fed. 870, 127 C. C. A. 454; Railroad v. Rogers, 221 Fed. 52, 136 C. C. A. 530; Boyle v. Railroad (D. C.) 221 Fed. 453; Shanley v. Railroad (D. C.) 221 Fed. 1012. We think our decision should rest on other grounds, and shall therefore assume (but without deciding) that the act would be satisfied if the fact were that Ketz had just been engaged in the repair of interstate engines, and shall assume also that the jury was properly allowed to find this fact; and for the purposes of this opinion we shall assume further that the jury was justified in finding that the company was negligent in leaving the lower side of the bridge unguarded, but it is plain that a vital question still remained, namely: Was this negligence the proximate cause of the death?

[1] This rather perplexing subject of proximate cause has received much attention, both from text-writers and the courts, and the numerous cases are by no means harmonious. Elaborate notes, with very full citations, may be found in 13 L. R. A. (N. S.) 1219, 18 L. R. A. (N. S.) 1135, and 20 L. R. A. (N. S.) 732; but for the rule in the federal courts we need not go beyond Railway Co. v. Kellogg, 94 U. S. 474, 24 L. Ed. 256, and Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395. In the Kellogg Case Mr. Justice Strong said:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft-cited case of the squib thrown in the market place. 2 Bl. Rep. 892. The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

And in the Boon Case the same justice expressed the same thought in different language:

"The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental, or instruments of a superior or controlling agency, are not the proximate causes and the

responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster. * * * The proximate cause, as we have seen, is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the loss."

These rules have been often followed, e. g., in Scheffer v. Railroad, 105 U. S. 251, 26 L. Ed. 1070; Hayes v. Railroad, 111 U. S. 228, 4 Sup. Ct. 369, 28 L. Ed. 410; The G. R. Booth, 171 U. S. 450, 19 Sup. Ct. 9, 43 L. Ed. 234; Railway Co. v. Calhoun, 213 U. S. 7, 29 Sup. Ct. 321, 53 L. Ed. 671; Railway Co. v. Stewart, 228 U. S. 363, 33 Sup. Ct. 548, 57 L. Ed. 875; Hartford Co. v. Pabst Co. (C. C. A. 7th) 201 Fed. 626, 120 C. C. A. 45, Ann. Cas. 1915A, 637; and Armour & Co. v. Harcrow (C. C. A. 9th) 217 Fed. 227, 133 C. C. A. 218. In Railway Co. v. Calhoun, supra, it is said by Mr. Justice Moody:

"Few questions have more frequently come before the courts than whether a particular mischief was the result of a particular default. It would not be useful to examine the numerous decisions in which this question has received consideration, for no case exactly resembles another, and slight differences of fact may be of great importance. The rules of law are reasonably well settled, however difficult they may be of application to the varied affairs of life. In the case undoubtedly the plaintiff's injury was traceable to the original negligence, in the sense that it would not have occurred if the plaintiff had not been separated from his mother. Nevertheless, that negligence may not be the cause of the injury, in the meaning which the law attributes to the word 'cause' when used in this connection. The law, in its practical administration, in cases of this kind regards only proximate or immediate and not remote causes, and in ascertaining which is proximate and which remote refuses to indulge in metaphysical niceties. Where, in the sequence of events between the original default and the final mischief, an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause. Insurance Co. v. Tweed, 7 Wall. 44, 52 [19 L. Ed. 65]. This is emphatically true when the intervening cause is the act of some person entirely unrelated to the original actor. Nevertheless, a careless person is liable for all the natural and probable consequences of his misconduct. If the misconduct is of a character which, according to the usual experience of mankind, is calculated to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse him, and the subsequent mischief will be held to be the result of the original misconduct. This is upon the ground that one is held responsible for all the consequences of his act which are natural and probable, and ought to have been foreseen by a reasonably prudent man."

And in Armour & Co. v. Harcrow, supra, the Circuit Court of Appeals said:

"An injury which is the natural and probable cause of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever, of the injury. The natural consequence of an act is the consequence which ordinarily follows it, the result which may reasonably be anticipated from it. A probable consequence is one that is more likely to follow its supposed cause than it is not to follow it [citing cases]."

Now, we do not intimate that the subject should have been elaborately discussed in the charge, but unless the jury received adequate in-

structions thereon they could neither know nor apply the rules that have thus been laid down for the federal courts. We cannot assume that the jury knew how to deal with the testimony, unless they were properly instructed, and the matter should have been explained with sufficient clearness. Unfortunately the trial judge passed over the subject altogether, barely alluding to it in one sentence of the charge, " * * * And, second, was his death the proximate result of the defendant's negligence?" although the general subject had been brought to his attention by the company's fifth and ninth points, which asked for instructions that the plaintiff could not recover unless the company had been guilty of negligence that was the proximate cause of the death. In our opinion, the charge was inadequate on this vital matter, and for this reason alone it would be necessary to reverse the judgment.

But we think we should say, also, that upon the evidence presented by this record the defendant was entitled to binding instructions. So far as appears, the proximate cause of the decedent's death may as well have been his own negligence, or some unexplained happening, as the company's negligence in leaving the bridge unguarded. Practically the jury was permitted to guess at what had occurred, without sufficient evidence to point to the company's negligence as the dominant, efficient, cause. Nobody could tell what started the train of events that ended in the decedent's plunge into the river. He may have voluntarily left a concededly safe place, and taken up a position of danger; if so, was his death solely due to his own fault? He may have slipped; he may have stumbled over something lying in the roadway, for whose presence the company was not liable; he may have stumbled awkwardly over his own feet, as sometimes happens; he may have been seized with dizziness, as not infrequently occurs with people otherwise in good health; or he may have been suddenly attacked by some more serious disorder. He may perhaps have been led by curiosity to look at the stream, and may have lost his balance. In short, the slight evidence is consistent with any one of several theories concerning what took place, and does not point satisfactorily toward one rather than another. In such a situation the jury should not have been allowed to indulge in conjecture, but in effect, this, we think, was done. Without further evidence pointing to the company's negligence as the proximate cause of the death, the District Judge should instruct the jury at another trial to find for the defendant.

The judgment is reversed, and a new trial is awarded.

## On Reargument.

PER CURIAM. This case has been reargued, but we see no reason to change the conclusion already reached, or the opinion supporting that conclusion. Indeed, the reargument did not touch one sufficient reason for reversal, namely, the inadequacy of the charge concerning the federal rule affecting proximate cause.

The judgment heretofore entered will therefore not be disturbed.