### Collins' Administrator v. Gatliff Coal Company.

(Decided November 17, 1922.)

### Appeal from Whitley Circuit Court.

1. Master and Servant—Action for Death—Negligence.—Where from the whole evidence in an action for death by negligence it may as reasonably be said the death is attributable to a cause for which

the defendant is not liable as to a cause which will subject him to liability, there can be no recovery, for a recovery will not be based upon mere surmise, speculation or guesswork.

2.   Master and Servant—Death From Noxious Gas in Mine—Submission to Jury.—In an action charging that decedent came to his death by breathing noxious gases negligently permitted to accumulate in his place of work in a coal mine, where the evidence only showed the opportunity for the gas to have been there, and that decedent just prior to his death exhibited one of the many symptoms of gas poisoning, but there was direct and convincing evidence that there was in fact no poisonous gas in the working place that day, and expert evidence that the death was from another cause, the court properly refused to submit the case to the jury.

HENRY C. GILLIS and R. L. POPE for appellant.

TYE & SILER for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

Appellant's intestate was a strong, healthy, vigorous man of fifty-eight years and was an efficient and capable coal miner, which occupation he had followed for a number of years.

On the 26th day of May, 1919, he died suddenly while following his vocation in the mines of appellee in Whitley county.

This is an action by his personal representative against the coal mining company wherein it is alleged his death was brought about while employed by it as a coal miner and while engaged in its mine in that occupation because said decedent was forced to and did breathe and inhale poisonous and noxious gases and bad air, and that on and prior to the date of his death the defendant negligently and carelessly and in violation of law failed to provide for its said mine and the working place of decedent artificial or other means of ventilation of such capacity or power as to provide or produce an abundant or sufficient supply of air, and failed to provide or maintain for such mine or the working place of decedent such ventilation as would provide to him the statutory quantity of air and because of such negligence and failure by defendant poisonous and noxious gases and bad air accumulated in said mine in the working place of decedent whereby his death was caused.

The answer was only a traverse, and the parties went to trial upon the issues as thus made up.

At the close of plaintiff's evidence defendant asked the court to direct the jury to find for it, but the court did not then act on the motion and required defendant to introduce its evidence. Then, again, at the conclusion of all the evidence, the defendant renewed the motion, and the court upon consideration of same then sustained it and directed the jury to return a verdict for the defendant, which was done, and the court having declined to grant plaintiff a new trial he has appealed.

It is apparent the motion for a directed verdict was sustained because of the trial court's opinion that the evidence failed to show any noxious gases in the working place of decedent on the day he died, or that his death resulted from breathing any such gases. Therefore, to enable us to pass upon that question, a statement of the evidence will be necessary.

The evidence tended to show that black damp (carbon dioxide) and white damp (carbon monoxide) are to some extent present in all coal mines, and that each of them is poisonous and will when inhaled in sufficient quantities produce death; that each of these poisonous gases is generated in abandoned parts of coal mines where water is contained, and that decedent's working place was near to such abandoned workings, and that some two or three months before an opening had been made between these old workings and that part of the mine in which decedent was engaged; that black damp usually collects in low places in mines because it is heavier than air, and that decedent's working place was the lowest place in that section of the mine; that a week before decedent's death black damp accumulated in decedent's working place and crept up on higher ground to the working place of others; that about an hour before the death of appellant there was a fall of the roof in the old workings which might have had the effect of forcing out the poisonous gas into Collins' place of work; that the only way to get the poison gas out is by ventilation, and that a certain curtain which it is claimed was necessary to force the artificial current of air to Collins' place of work was down the day of his death and for that reason no current was forced there. As to the curtain, however, the evidence shows that it was hung the morning of his death, but had probably been to some extent interfered with or torn down by the operation of the coal cars in the mine.

The above is, in substance, the evidence which the plaintiff relies upon as justifying a submission of the case to the jury, but a close inspection of the evidence discloses that no single witness, either for the plaintiff or for the defendant, testified that Collins died from inhaling poisonous gas or that there was any poisonous gas that day in his place of work.

Collins was an experienced miner, and presumably knew and could detect when there was an accumulation of gas, not only from his own sensations but from the action of his miner's lamp and the light thereon. The evidence is undisputed that he went into the working place about seven o'clock in the morning and continued to work there until two o'clock in the afternoon, during which time he loaded six cars of coal which is said in the evidence to be a fairly good day's work; and while it is true that about nine o'clock in the morning after he had been at work two hours he complained of a pain in his left side, he continued to work and load coal for five hours thereafter before he was again stricken with a severe pain in his left side and from which he apparently died in a few minutes.

The plaintiff introduced but two witnesses who were in the working place of Collins on the day in question; one of them was called just before Collins' death to aid in pushing out two cars of coal from his working place into the entry and was informed at the time that Collins was ill. This witness, who was at work nearby, went to the place and with the assistance of Collins' helper pushed one of the cars out of the working place into the entry and was preparing to push the other car out when Collins' condition attracted his attention and he took him out into the entry and placed him on a car preparatory to taking him home when Collins died, and this witness, who was in the working place at the very time of Collins' death and who was himself an experienced miner, says that he detected nothing wrong with the air at that time.

Another witness for the plaintiff, who was in Collins' working place a few minutes before his death and who was also an experienced miner and who remained there long enough to help Collins do some work, states that he did not observe anything wrong with the air.

The evidence shows that black damp causes a miner's carbide light to burn low or even to go out or to make it very hot, and the whole evidence of all the witnesses who were in Collins' working place that day shows that

their mining lamps did not indicate the presence of black damp. In addition to this the evidence shows that Collins was at work only ten or twelve feet from the regular air passage through which the air was forced by artificial means.

The defendant introduced three witnesses who were during that day in the working place of Collins. One of those was Donaldson, his helper, who had remained in the working place with Collins from seven o'clock that morning until two o'clock, when he died, and he testified that he felt no ill effects from the air and that he did not notice any bad air, and the air seemed clear to him.

Another witness states that he was an experienced miner, that he was in the working place of Collins only a short time before his death and stayed there until two cars of coal were loaded; that Collins made no complaint while he was in there of any kind, nor did his helper; that his miner's lamp burned perfectly while he was in there and that the air was as good as at any point in the mine; that he heard Collins was sick about seven to ten minutes after he had left the place.

Another witness stated he had had three years' experience as a miner and that he was in Collins' working place that morning and Collins was at work and witness paid no attention to the condition of the air, but heard no complaint from Collins about it.

The effect of such poisoning is shown by the evidence to be, first, a stimulation of the heart causing it to beat rapidly; then, later, the heart action is depressed and the one affected becomes dizzy and weak and has difficulty in breathing; it is accompanied by headache and a choking sensation and when the patient gets to fresh air he becomes sick and tries to vomit.

The evidence here shows that about nine o'clock in the morning decedent complained to his helper of a pain in his left side but continued for five hours thereafter to do his work before he again complained of a severe pain in his left side and that he shortly thereafter died. When he was taken into the passageway out of his working place he "squatted on his hunkers" and seemed to be sick and tried to vomit.

The defendant also introduced Dr. Howard, who testified that he had examined the body of decedent after his death and had gotten a history of his illness; that he examined his skin and the pupils of his eyes and the mucus of his mouth, and in answer to a hypothetical

question based upon these and other facts he expressed his opinion that Collins died from heart failure, and said that was the cause of death placed by him on the death certificate.

In the first place, the evidence wholly fails to show there was any poisonous gas in the working place of Collins during that day. It only shows that the working place was a low one and that such gases customarily were present in such places, and that the working place was in such proximity to the old workings as that one might assume, or guess, or infer that such gases had escaped through an opening from the old workings into Collins' place of work. The contention when analyzed is that because plaintiff showed by these circumstances the opportunity for the poisonous gases to have been in the working place, and the further fact that decedent while ill tried to vomit, which is shown to be one of the symptoms of gas poisoning, that an issue of fact as to whether there was gas in the working place and as to whether he died from breathing that gas was thereby made.

While it is not in all cases absolutely essential there should be direct evidence of such facts, it is a rule of law in this state that where from the whole evidence in such cases it may as reasonably be said that the injury or death can be attributed to a cause which will excuse defendant as to a cause that will subject him to liability, there can be no recovery, for the reason that recovery cannot and will not be based upon mere surmise, speculation or guesswork indulged in either by the jury or by a court.

Here we have on the one hand evidence of an opportunity for the gas to have been in the working place and evidence that decedent exhibited one of many symptoms of gas poisoning just before his death, but there is a total failure of evidence that there was in fact any poisonous gas in the working place that day. On the other hand we have convincing evidence that there was no such poisonous gas in the working place that day; we have the convincing fact that decedent complained of a pain in his left side five hours before his death and continued for that period to labor in the same place without further inconvenience until he was stricken with a similar attack; and we have not only the evidence of five experienced witnesses, who had been that day in the place of work, that they detected no evidence of poisonous gas,

but we have the additional almost conclusive fact that his helper worked by his side in the same place for the same seven hours that he did that day, and experienced no inconvenience from the quality of the air. In addition to all this we have the expert testimony of the only physician who examined him after his death that in his opinion he died from heart failure.

Under this state of the evidence the trial court properly, in recognition of the rule of law above stated, directed a verdict for the defendant. L. & N. v. Campbell's Admr. 186 Ky. 631; Weidekamp's Admx. v. L. & N. R., 159 Ky. 674; L. & N. v. Stayton's Admr., 163 Ky. 760; Hearell, Admr. v. I. C. Ry. Co., 185 Ky. 41; Delaware & Hudson Co. v. Ketz, 233 Fed. 31.

Judgment affirmed.