## ST. LOUIS–SAN FRANCISCO RY. CO. v. MILLS.

(Circuit Court of Appeals, Fifth Circuit. December 17, 1924. Dissenting Opinion, February 9, 1925.)

No. 4366.

1. Commerce ⬅27(8)—Railroad car inspector held employed in "interstate commerce" when killed.

Where the last work done by a car inspector was the inspection of a train containing some cars employed in interstate and some in intrastate traffic, and he was killed on his way home from work, he was employed in "interstate commerce" at the time of his death, within Employers' Liability Act (Comp. St. §§ 8657–8665).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. Master and servant ⬅286(1)—Railroad's negligence in failing to guard employee, shot during strike, held question for jury.

Plaintiff's intestate was employed by defendant railroad company as a car inspector during a strike, defendant furnishing guards for such employees, not only while working, but while on their way to and from their homes. While deceased and another inspector, accompanied by a single guard, were on their way home from work, riding in a street car, deceased was shot and killed. Threats of personal violence to employees had been reported to the chief of the guards. Held, that it was a

fair inference that protection of such employees was an implied condition of the employment, that the relation of employer and employee continued while deceased was on his way home accompanied by a guard, and that the question whether defendant was negligent in failing to provide more than one guard, under the conditions existing, was for the jury.

### 3. Negligence ☞59—When negligence proximate cause of injury.

Negligence properly may be regarded as the proximate cause of an injury, if it appears that the injury was the natural and probable consequence of the negligence, and that in the light of the attending circumstances it ought to have been foreseen by the wrongdoer.

### 4. Negligence ☞62(1) — Intervening cause which should have been foreseen will not relieve from liability.

If negligence is of a character which, according to the usual experience of mankind, is calculated to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse it, and the subsequent mischief will be held to be the result of the original negligence.

Estes, District Judge, dissenting.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action at law by Odell Mills, administratrix of the estate of Ira S. Mills, deceased, against the St. Louis-San Francisco Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Certiorari granted 45 S. Ct. 354, 69 L. Ed.

——.

W. R. C. Cocke, of Birmingham, Ala. (Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, Ala., on the brief), for plaintiff in error.

G. R. Harsh, of Birmingham, Ala. (Harsh, Harsh & Harsh, of Birmingham, Ala., on the brief), for defendant in error.

Before WALKER and BRYAN, Circuit Judges, and ESTES, District Judge.

WALKER, Circuit Judge. This was an action under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) to recover damages for the death of Ira S. Mills, an employee of the plaintiff in error, a railway company; the death of the employee being attributed to negligence chargeable against his employer. In the trial there was evidence to the following effect:

The employee entered the service of the employer on the Monday next preceding the Thursday night when he was shot, as stated below. His work was that of a car inspector at the employer's East Thomas yards, in Birmingham, Ala., and included the inspection of both intrastate and interstate trains. Prior to and at the time the employee entered upon his service, and while he was engaged therein, a strike of the employer's former employees was in progress, and during all that time the employer furnished guards to guard the men who took the places of the strikers; the men being guarded while they were coming from their places of residence to their place of work, while they were at work, and while they were returning to their places of residence. Between 10 and 11 o'clock Thursday night the employee and another car inspector got through inspecting a train that was going to Amory, Miss. They did no work after inspecting that train, except to put in their proper place the lanterns and other articles they had been using, and make and turn in to the office their reports. Soon thereafter the two car inspectors, accompanied by a guard, who had been assigned to take them to their homes in the city of Birmingham, left the yards, walked a distance of about a half a mile to where they were to take a street car, and got on a car at that place. Soon after they got on the car, one of several men who were on the rear platform came into the car, put his hand on the shoulder of Weathers, one of the two car inspectors, and, with an oath, told him to get off. About that time several shots were fired from the rear platform, some of which struck Mills, and he died from the wounds the next day. Prior to the shooting threats of personal violence to the men who were working were made by strikers, and the fact that such threats were made was reported to the employer's employee, Wilkins, who was in charge or command of the guards. The assignment of a guard to take the two car inspectors to their homes was made by Wilkins, the boss of the guards, after such boss had been informed during the same Thursday that the person so assigned, while acting as a guard, had been nervous and scared when there were some pickets near the place where an employee he was guarding was at work, and had left the employee he was guarding and gone back to the employer's office. When that guard got on the street car with the two car inspectors, the butt of his pistol was showing from under his coat. One of the men who did the shooting looked at the guard, and at the butt of his pistol, and at one of his companions, and laughed.

The court's charge to the jury contained instructions to the following effect: If there was a duty on the employer to furnish pro-

tection to the employee while he was on his way home from doing interstate work on the employer's premises, a violation of that duty would be a violation of the employer's duty to an interstate employee.· If by custom the employer had been furnishing protection to its employees for such length of time as would induce the employees to believe that they would be protected, then it would be a question of fact for the jury to determine whether out of that ·custom or habit a duty would or·would not spring up to furnish protection, not only on the employer's premises, but on the journey of the employee to his home. If you believe that the reports testified to were made to Wilkins and that those reports were of such a character as would have made a reasonably prudent man reinforce the guard, and if you believe, from all the circumstances and situation of the strike, that a reasonably prudent man would have reasonably anticipated that the danger was of so great an extent that he would have sent more guards than one, then you might find that there was negligence on the part of Wilkins. If you are reasonably satisfied from the evidence that the assault would have been prevented, had a greater guard been furnished, if you also find that a greater guard should have been furnished in the exercise of due care, then that could show that there was a causal relation between the failure to furnish ·a greater guard and the· accident resulting in the death of the intestate. The court refused to give the following charge requested by the defendant: "If the jury believe the evidence your verdict must be for the defendant." The above-mentioned rulings are presented for review.

[1, 2] The employee's day's work being in both intrastate and interstate commerce, while, after finishing his day's work, he was making a trip which was a necessary incident of that work as a whole, ·he was employed in interstate commerce. Erie R. Co. v. Winfield, 244 U. S. 170, 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918B, 662. Though, when the employee was shot, he had left his employer's premises and was on a vehicle operated by a third party, it fairly may be said that he was still an employee, if the trip he was making was in immediate connection with his employment, and during that trip the employer owed him a duty, the performance of which was part of the consideration by which he was induced to enter upon and continue in the employment. Wilson v. Banner Lumber Co., 108 La. 590, 32 So. 460; Doyle v. Fitchburg R. Co.,· 162

Mass. 66, 37 N. E. 770, 25 L. R. A. 157, 44 Am. St. Rep. 335. The evidence as to the circumstances under which the employee entered upon and remained in the employer's service furnished support for an inference that the employer's undertaking to furnish the employee protection during the . trip from his home to the place of work and from the place of work back to his home was part of the consideration moving to the employee for the service he rendered. It might be inferred that such protection had to be furnished to obtain labor at the place needed, and that the relation of employer and employee still continued while the employee was on his way from his place of work to his home, accompanied by a guard furnished by the employer pursuant to an implied obligation to protect the employee from perils to which he was exposed in consequence of his employment. There was evidence furnishing support for a finding that there was negligence in the matter of having the employee guarded while he was returning to his home.

[3, 4] In behalf of the employer it is contended that, though it negligently failed to comply with an obligation it incurred to furnish the employee protection from threatened acts of violence by strikers or their sympathizers, which, under the circumstances, might reasonably have been anticipated, that negligence was not a proximate cause of the employee's death, because his death would not have occurred, but for the supervening of an independent and disconnected agency. Negligence properly may be regarded as the proximate cause of an injury, if it appears that the injury was the natural and probable consequence of the negligence, and that in the light of the attending circumstances it ought to have been ·foreseen. by the wrongdoer. A careless person is liable for all the natural and probable consequences of his misconduct. If the misconduct is of a character which, according to. the usual experience of mankind, is calculated to invite or induce the intervention of some subsequent cause, ·the intervening cause will not excuse him, and the subsequent mischief will be held to be the result of·the original misconduct. Milwaukee, etc., Railway Co. v. Kellogg, 94 U. ·S. 469, 24 L. Ed. 256; Atchison, etc., Railway Co. v. Calhoun, 213 U. S. 1, 9, 29 S. Ct. 321, 53 L. Ed. 671; Delaware & Hudson Co. v. Ketz, 233 F. 31, 147 C. C. A. 101.

If the employer negligently failed to perform a duty incurred by it to protect the deceased from assault or personal violence

while on the trip from his place of work to his home, and if in the circumstances of that misconduct a natural and probable consequence of it was a reasonably avoidable exposure of the deceased to personal violence during that trip, and in the light of those circumstances the employer ought to have foreseen that such misconduct on its part was calculated to invite or induce the peril to the deceased which resulted in his injury and death, the fact that the source of that peril was an independent agency would not keep the deceased's death from properly being held to be the result of his employer's negligence. Evidence adduced was such as to warrant the submission to the jury under appropriate instructions of the questions whether the employer was or was not under a duty to guard the employee while the latter was returning from his place of work to his home, whether the employer did or did not negligently fail to perform that duty, and whether, if it was negligent in that regard, its negligence did or did not occur under such circumstances as to make the death of the employee in the way it occurred a result of that negligence.

We conclude that the court did not err in refusing to give the above set out charge requested by the defendant, or in its instructions to the jury as to questions raised by the pleadings and evidence in the case.

The judgment is affirmed.

ESTES, District Judge (dissenting). I do not concur in the view of the majority of the court that the employee in this case was, at the time of his death, engaged in interstate commerce. I do not think, therefore, that the rights of the parties are to be determined by the provisions of the federal Employers' Liability Act (Comp. St. §§ 8657–8665).

That act can, under the Constitution and by its own terms, apply only to cases where both the employer and the employee, at the time of the injury, were engaged in interstate commerce. Employers' Liability Cases, 207 U. S. 501, 28 S. Ct. 141, 52 L. Ed. 297; 8 Fed. Stat. Ann. 1208. Of course, in the great variety of circumstances and conditions that continually arise, its application sometimes becomes a difficult problem. But it is quite manifest that, in order to come within its provisions, the work being done both by the employer and the employed, when the injury occurs, must have such imminent or immediate connection with the interstate commerce work of the road as to be, in a very

real sense, a part of such commerce. Shanks v. Delaware Railroad, 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; Pederson v. Delaware Railroad, 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. The fact that the work was in the nature of preparation for work that has to do with interstate commerce, the general character or scope of an employee's duties, what he may have done before he was injured, or what he intended to do afterward, are relatively unimportant. The nature of the work being done at the immediate time of the injury—the task at hand—is the determining factor. Chicago Railway v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; Minneapolis Railway v. Winters, 242 U. S. 354, 37 S. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54; Shanks v. Railroad, supra.

In every case where the application of the act has been considered by the Supreme Court, this test, in so far as I have been able to ascertain, has been applied. Pederson v. Delaware Railroad, supra; North Carolina Railway v. Zachary, 232 U. S. 260, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159; Illinois Railroad v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Delaware Railroad v. Yurkonis, 238 U. S. 439, 35 S. Ct. 902, 59 L. Ed. 1397; Shanks v. Delaware Railroad, supra; Chicago Railway v. Harrington, supra; Minneapolis Railway v. Winters, supra; Erie Railroad v. Winnfield, 244 U. S. 171, 37 S. Ct. 556, 61 L. Ed. 1057, Ann. Cas. 1918E, 662; Lehigh Railway v. Barlow, 244 U. S. 183, 37 S. Ct. 515, 61 L. Ed. 1070.

The evidence in this case shows without dispute that the day's work of the injured employee had been concluded. His tools had been put in place and his reports had been made. He had left the company's premises, and was shot when en route home on a street car. As I view it, neither the employer nor the employee were engaged in interstate commerce at the time of the tragedy, or, indeed, in commerce at all.

Every employee of a railroad must, in order to report for work, leave his home in the morning and return at the close of the day. Such a trip may be said to be "a necessary incident of his work as a whole." If that were the decisive thing—that is, that the trip was necessary to his work as a whole—then any employee whose work on the railroad is of an interstate character may be said to be engaged or employed in interstate commerce when making such trips. The re-

lation to interstate commerce in that instance would be the same as in this case.

If there was a duty on the part of the employer to furnish protection to an employee at such time, it was a duty occasioned by a special obligation or contract to do so. It might be, as the trial court said in his charge, that "a violation of that duty would be a violation of the employer's duty to an interstate employee," but the point is that in order to make the statute applicable, the employee must, at the time of his injury, have been more than an interstate employee. He must, at such time, have been himself engaged in interstate commerce. This is true, even though it may be said that under the conditions "the deceased was an employee of the company, and the protection was a part of the consideration which induced him to enter upon and continue in the employment." That fact would not mean that he was engaged in interstate commerce at the time of his injury.

The negligence proven in this case was, in my opinion, the failure to adequately protect this employé when going to and returning from his work. The basis of liability for such is the failure to perform a duty incident to the special engagement or undertaking. Schaff v. Stripling (Tex. Civ. App.) 265 S. W. 265; Kansas Railway v. Pike (Tex. Civ. App.) 264 S. W. 593. In that state of affairs, it would be immaterial whether the employé was engaged in intrastate or interstate commerce, or whether he was engaged in commerce at all.

In view of the relative rights of the state and federal governments, it is important, I think, for distinctions of this character to be preserved, and for the application of federal legislation to be limited to spheres within which such legislation is permitted, under the Constitution, to operate.