# Dean Branch Coal Co. v. Collins.

Oct. 6, 1939.

Cleon K. Calvert for appellant.

R. S. Rose and Victor A. Jordan for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

This action was instituted by the appellee, a coal miner, against the appellant, his employer, to recover damages for injuries occasioned by the inhalation of carbon monoxide gas while working in appellant's mine. In substance, the cause of action alleged was that the appellant had negligently permitted the gas to accumulate in the mine to such an extent that it was dangerous, and hence had failed to exercise ordinary care to provide appellee with a reasonably safe place in which to work. The answer was a traverse, and the trial resulted in a verdict for the appellee for $3,000.

The principal grounds on which a reversal is sought, and the only grounds which we deem it necessary to discuss, are that the Court should have sustained appellant's motion for a directed verdict, and that the verdict is flagrantly against the weight of the evidence.

The alleged injury occurred between ten and eleven o'clock on the morning of July 11, 1935, at a point about four or five hundred feet distant from the mouth of the mine. Appellee had gone to work about nine o'clock, and apparently was indisposed at that time. Asked on direct examination what occurred he said:

"Well, I was in there about, went to work about 9 o'clock, head hurting, aching hurting all over, commenced throwing up, and between ten and eleven o'clock I got so sick I throwed up, and I told him, I am sick, and so sick I can hardly stand up, and I got back from the front end of the car, back behind the car and stood there and sorty placed blocks of coal on back of the car, while others loading that car load, and I got over there and set down on side there, set down part of the time I was so sick I couldn't stand up got that car loaded, they all come out."

He quit work between twelve and one o'clock, when, apparently, the mine discontinued operations because of the exhaustion of the coal vein, and walked and "scooted" to his home. The following week he called the Company's physician, Dr. Parrott, who, when introduced as a witness by the appellant, testified that on July 16th he examined appellee and found him suffering from acute gastro intestinal trouble attributable to "bad liquor," which, according to the doctor, appellee admitted having drunk. There was nothing to indicate carbon monoxide poisoning. Although appellee had been working in the mine approximately eight months he had never had any similar attack. Relative to the air in the mine, the appellee testified on direct examination:

"Q. 63. Did that mine have any sort of apparatus at all to furnish you sufficient amount of air, that you could work in the mine without getting down? A. Yes sir.

"Q. 64. Was there sufficient amount of air there at the time you got down? A. (No answer)

"Q. 65. Mr. Collins, did you have enough air or not? A. I don't know whether could or not.

"Q. 66. Why don't you know that? A. Because I'm not experienced with that."

And again:

"Q. 70. Do you know anything that caused you to throw up and get down except the condition of that air? A. Nothing, except it is bound to have been that."

The appellee further testified that he was forty-four years of age at the time of his alleged injury, and that he had not been able to work since it occurred because of "short breath, aching, head hurting, aching all over smothering here in my chest." The witness admitted that he knew nothing about the effect of carbon monoxide gas on other men, and that the only physician he had consulted, other than Dr. Parrott, was Dr. Combs, also a Company physician, whom he had seen twice, at his office in Pineville and who had told him that he had "something like scrufula, that's in your neck, I don't know what you call it." It may be here noted that Dr. Combs, when introduced as a witness by appellant, stated that he had examined the appellee on three or four occasions in September and October, 1935, and had found no evidence of carbon monoxide poisoning. On the contrary, he had attributed appellee's condition to an over-active thyroid gland or goiter.

Appellee attempted to support his claim that he was made ill by carbon monoxide gas by the testimony of W. H. Fuson, Harvey Fry, Clarence Watson, and Ben Suttles, all of whom were miners. Fuson stated that he had worked in the place where appellee had been made ill, and that the air there was bad and had made him sick; that he was acquainted with the symptoms of carbon monoxide poisoning, such as back ache, head ache, and vomiting. However, on the day appellee became ill the witness was working at a point in the mine about a quarter of a mile distant from the place where Collins was working. Fry testified that he was familiar with the symptoms of carbon monoxide poisoning, but that he had never seen the place where appellee claims to have been injured, in fact, had never been in that mine, and hence knew nothing of the conditions there. Watson testified that he also was familiar with the symptoms of

carbon monoxide poisoning, having been made sick on one occasion at another mine, although he had never been made ill while working in the mine in which appellee claims to have been injured, and that at the place in the mine where the witness was working the air was good. Suttles testified as to the methods necessary to be employed properly to ventilate a mine, and that he was familiar with the symptoms of carbon monoxide poisoning. However, he did not attempt to testify as to the condition of the air in the mine in which appellee claims to have been injured, or as to appellee's condition. Except for the testimony of several witnesses that he had been strong and healthy prior to his illness, which began on July 11, 1935, and that he had been incapacitated thereafter, the foregoing was all the testimony introduced by appellee relating to his alleged injury or the manner in which it was received.

For appellant, numerous witnesses testified that the mine was properly ventilated by means of "breakthroughs" and although they had worked in the mine they had heard no complaints of bad air. Clarence Click, who was working with appellee at the time he claims to have been injured, and Walter Wilson, who was working twenty or thirty feet away, were not made ill nor did they see any indication that appellee had been injured. As before stated, the only two physicians who had examined or treated appellee testified that they found no evidence of carbon monoxide poisoning, but, on the contrary, attributed his illness to other causes. It is true that Dr. Parrott on cross-examination admitted that on September 7, 1935, he had signed a certificate addressed "To Whom It May Concern" reciting that appellee had been sick for several weeks with a complication of diseases, the chief of which was carbon monoxide poisoning due to working in mines where there had been poor or no ventilation, but the witness explained this by stating that he did not examine appellee when he called upon him for the statement, and gave him the certificate in order to help him get "some help from the relief." While this circumstance might seriously affect the witness's creditability, it does not constitute substantive evidence that appellee had in fact sustained an injury from carbon monoxide poisoning.

From the foregoing it is apparent that there was not sufficient evidence as to the cause of appellee's illness to take the case to the jury. We do not hold that

the evidence was insufficient on the issue of negligence, as several of the witnesses testified that the mine was lacking in the necessary apparatus and equipment to afford sufficient ventilation and that the natural openings were insufficient for that purpose. The fault in appellee's case is the lack of proof that his illness resulted from bad air or carbon monoxide poisoning. While the evidence introduced by appellee established the possibility that carbon monoxide gas was present at the place and at the time he was stricken, and that this might have been the cause of his illness, the evidence introduced by appellant establishes that the men who were working with appellee on the occasion referred to did not notice that the air was bad and suffered no ill effects from it. Moreover, we have the testimony of the only two physicians who testified in the case that in their opinion appellee's illnes was not the result of carbon monoxide poisoning but was attributable to other causes. Collins' Adm'r v. Gatliff Coal Company, 196 Ky. 517, 244 S. W. 887. If on another trial the evidence is the same, the Court will direct the jury to find a verdict for the defendant.

Judgment reversed.